UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
:
IN RE VEECO INSTRUMENTS INC.        :    No. 7:05-MD-01695-CM
SECURITIES LITIGATION               :
:
:
------------------------------------x
:
THIS DOCUMENT RELATES TO:           :
ALL ACTIONS                         :
:
:
------------------------------------x


**MEMORANDUM OF LAW OF DEFENDANTS VEECO INSTRUMENTS INC.,
EDWARD H. BRAUN, JOHN F. REIN, JR. AND JOHN P. KIERNAN
<u>IN SUPPORT OF THEIR MOTION FOR PARTIAL RECONSIDERATION</u>**


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendants
Veeco Instruments Inc., Edward H. Braun,
John F. Rein, Jr. and John P. Kiernan

April 5, 2006

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ackerman v. National Property Analysts, Inc.*, 887 F. Supp. 494 (S.D.N.Y. 1992) ................ 8

*Ades v. Deloitte & Touche*, 1992 WL 6142 (S.D.N.Y. Jan. 3, 1992) ................ 2

*Catskill Development, L.L.C. v. Park Place Entertainment Corp.*,
154 F. Supp. 2d 696 (S.D.N.Y. 2001) ................ 7

*Chill v. General Elec. Co.*, 101 F.3d 263 (2d Cir. 1995) ................ 11

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ................ 3

*Faulkner v. Beer*, 2005 WL 476976 (S.D.N.Y. Feb. 28, 2005) ................ 8

*In re Atlas Air Worldwide Holdings, Inc. Secs. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004) ................ 9, 10

*In re BISYS Secs. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ................ 7, 8

*In re Bristol-Myers Secs. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004) ................ 10

*In re Carter-Wallace, Inc. Secs. Litig.*, 150 F.3d 153 (2d Cir. 1998) ................ 4

*In re Citigroup, Inc. Secs. Litig.*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004) ................ 8

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 308 F. Supp. 2d 249 (S.D.N.Y. 2004) ................ 4

*In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003) ................ 3

*In re Oxford Health Plans, Inc. Secs. Litig.*, 51 F. Supp. 2d 290 (S.D.N.Y. 1999) ................ 10

*Jacobs v. Coopers & Lybrand, L.L.P.*, 1999 WL 101772 (S.D.N.Y. Mar. 1, 1999) ................ 8

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ................ 2

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ................ 3, 5

*Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179 (S.D.N.Y. 2000) ................ 3

Moving defendants Veeco Instruments Inc., Edward H. Braun, John F. Rein, Jr. and John P. Kiernan respectfully submit this memorandum of law in support of their motion, pursuant to Local Civil Rule 6.3, for reconsideration of certain portions of this Court's Amended Order and Decision, entered March 24, 2006, denying defendants' motion to dismiss the Consolidated Amended Complaint ("CAC" or "Amended Complaint").

## PRELIMINARY STATEMENT

In ruling on defendants' motion to dismiss, the Court correctly held that (1) plaintiffs failed to identify any motive on the part of defendants to defraud; and (2) defendants' alleged false statements on November 4, 2003 and March 12, 2004 "could not have misled a reasonable investor regarding the nature of the securities at issue." Order at 13-14, 24-25.

Perhaps due to the compressed briefing on a complex motion to dismiss, a number of defendants' arguments apparently were not sufficiently clear. Defendants hope this submission will clarify those arguments that appear to have been overlooked. While mindful of the obvious care reflected in the Court's Order, defendants respectfully request that the Court reconsider and alter those portions of the Order that denied defendants' motion to dismiss plaintiffs' allegations relating to the Sanan Group Contract and the supposed inventory stockpile of unsaleable reactors and that assessed plaintiffs' scienter allegations under the group pleading doctrine.[1]

---

[1] On this motion, defendants do not challenge that portion of the Court's Order that sustained plaintiffs' allegations relating to warranty costs and the Transition Services Agreement.

## ARGUMENT

"[B]ecause plaintiff has failed to demonstrate that defendants had a motive to defraud the shareholders, he must produce a *stronger* inference of [fraudulent intent]." *Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir. 2001) (emphasis added). Most respectfully, the Court overlooked arguments by defendants which demonstrate that plaintiffs' allegations relating to the Sanan Group Contract and the purported inventory stockpile of TurboDisc reactors do not satisfy the stringent pleading standard for scienter set forth in *Kalnit* and overlooked authority confirming that the group pleading doctrine cannot be used to plead scienter. *See Ades v. Deloitte & Touche*, 1992 WL 6142, at *3 (S.D.N.Y. Jan. 3, 1992) (granting motion for reconsideration and dismissing complaint because defendant "demonstrated that the court overlooked the inadequacy of the Complaint's pleading of scienter").

### I.  The Court Overlooked Defendants' Arguments Relating To The Sanan Group Contract

Defendants' principal argument was that the Sanan Group Contract *itself* directly refutes CW3's allegation that revenue on the contract was prematurely recognized.[2] *See* CAC ¶ 59 ("$3,624,000 of revenue was recognized on the Sanan Group sales agreement during the quarter ended March 31, 2004, almost one month *before* the agreement was signed and publicized in April 2004") (emphasis in original); CAC ¶ 132 ("the Company fraudulently recognized revenue in connection with the $10 million contract for the sale of TurbDisc reactors to the Sanan Group, beginning with $3.6 million fraudulently recognized in the first quarter of 2004 (ended March 31, 2004) *even though the contract was signed in late April 2004*.") (emphasis in original).

---

[2] *See* Defendants' Memorandum of Law, dated December 2, 2005, at 18.

2

The Sanan Group Contract was signed in October 2003, not April 2004, and well before any revenue was recognized on the contract in 2004. *See* Sanan Group Contract (attached as Exhibit I to the Declaration of Robert Serio, dated December 2, 2005).[3] Thus, the false assertion by CW3 that revenue was recognized before the contract was even signed should have been rejected. The mere forwarding of the contract to Messrs. Rein and Braun (CAC ¶ 60) also cannot support an inference of fraudulent recognition of revenue. *See Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) ("This Court finds that the documents contradict Plaintiffs' allegations and, therefore, this Court must grant Defendants' motion to dismiss [Plaintiffs' securities complaint].").

The Court also appears to have overlooked defendants' argument relating to CW3's assertion that unspecified employees in China were induced by increased bonuses to obtain fictitious sign-offs. Defendants did not contend that statements by plaintiffs' confidential sources should not be credited because "plaintiffs do not reveal the identity of the three confidential witnesses on which they rely." Order at 11. Defendants' argument did not rest on plaintiffs' failure to identify the confidential witnesses, but rather on plaintiffs' failure to have "described [them] in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000).[4] Plaintiffs allege only that CW3 was a high-ranking accounting officer who regularly participated in meetings and one-on-one discussions with Mr. Braun. CAC

---

[3] On defendants' motion to dismiss, it was proper for the Court to consider the Sanan Group Contract because plaintiffs rely on the contract (CAC ¶¶ 58-60) in asserting their claim. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003).

[4] *See* Defendants' Memorandum of Law, dated December 2, 2005, at 19.

3

¶¶ 7, 139. Veeco has offices and manufacturing sites in 12 countries. *See* Serio Decl. Ex. G. Plaintiffs do not allege that CW3 had any responsibility for TurboDisc sales in China, much less the Sanan Group Contract, or that he or she participated in any meetings or discussions with any of the defendants relating to bonus payments for employees in China. Absent some indication that CW3 would have known the information relating to the supposed inducements to Chinese employees attributed to him or her, there is no basis to accept CW3's bald assertion. *See, e.g., In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 308 F. Supp. 2d 249, 262 (S.D.N.Y. 2004) (rejecting allegation by confidential source because "plaintiff has failed to state the Network Planner's basis of knowledge of this information – while it would not be impossible for the Network Planner to possess this information, it is not apparent from the informant's title that he or she would probably possess such information").

In light of these well-established defects, plaintiffs are left with the unsupported allegation that the Company overstated revenue on the contract "in contravention of GAAP." CAC ¶ 59. That is insufficient to state a securities fraud claim. *See In re Carter-Wallace, Inc. Secs. Litig.*, 150 F.3d 153, 157 (2d Cir. 1998) ("one cannot state a claim for securities fraud merely by alleging a GAAP violation").

Accordingly, defendants respectfully request that the Court dismiss plaintiffs' allegations relating to the Sanan Group Contract.

## II. The Court Overlooked Defendants' Arguments Relating To The Alleged Inventory Stockpile Of Reactors

Defendants' arguments relating to the alleged inventory stockpile of TurboDisc reactors warrant reconsideration under Local Civil Rule 6.3. As an initial matter, there is nothing in Veeco's restatement to suggest that any adjustment relating to inventory was taken to "reflect the worthlessness of Veeco's 'build to stock' machines." CAC ¶ 76. CW3 is plaintiffs' alleged

4

source for their allegations that a writedown was taken to reflect "non-saleable or obsolete inventory." *Id.* ¶ 75. Plaintiffs do not allege that CW3 was employed by Veeco at the time of the restatement, much less that CW3 participated in or was privy to information about any restatement adjustment relating to inventory.

Defendants did not merely argue that the timing of a writedown constitutes a matter of business judgment. *See* Order at 17. Defendants' argument was that, unlike the plaintiffs in *Novak*, plaintiffs here do not allege any facts indicating that, during the first three quarters of 2004, defendants believed that the Company's inventory was worthless or would have to be sold below cost.[5] As held in *Novak,* absent particularized facts demonstrating that defendants believed inventory to be impaired, an alleged failure to recognize an inventory impairment earlier is insufficient to state a securities fraud claim: "In order to survive at this stage, the complaint must state *with particularity sufficient facts* to support the belief that the 'Box and Hold' inventory was of limited value, and accordingly that the defendants' positive public statements concerning inventory growth were false and misleading." *Novak*, 216 F.3d at 312 (emphasis added). Thus, in *Novak*, the Second Circuit sustained plaintiffs' complaint only because, *inter alia*, (1) "the complaint identifies with particularity several documentary sources," including internal company reports distributed to management which indicated that "much of the 'Box and Hold' inventory was several years old and thus unlikely to be sold at full price, if at all;" and (2) defendants "discussed the need to mark down inventory but refused to do so because that would damage the Company's financial prospects." *Id.* at 304, 311-13.

---

[5] *See* Defendants' Memorandum of Law, dated December 2, 2005, at 16-17; Defendants' Memorandum of Law, dated January 10, 2006, at 5.

There is nothing remotely comparable in the Amended Complaint. Plaintiffs' only non-conclusory allegation is that "based on twice-monthly calls, and quarterly binders prepared for Veeco management, Braun, Rein and Kiernan all had been informed of the increasing inventory levels throughout 2004." CAC ¶ 77. As plaintiffs acknowledge, inventory levels were increased following the TurboDisc acquisition in late 2003[6] as part of a business plan: "Because defendants wanted to be able to fill hoped-for future orders more quickly, they decided to build and stockpile 'generic' reactors that they hoped they could later customize to the customer's specifications." CAC ¶ 35. Defendants' alleged knowledge of increasing levels of inventory in 2004 does not allow an inference that they believed, just after implementing their business plan to increase inventory, that the inventory was worthless or would have to be sold below cost. There are no allegations that there were ever any discussions by defendants about the value of the inventory being impaired.

In sum, plaintiffs' allegation that defendants were aware of increasing inventory levels in 2004 does not come close to creating a strong inference that defendants fraudulently failed to take a writedown in 2004 to reflect "non-saleable or obsolete inventory." Accordingly, defendants respectfully request that the Court dismiss plaintiffs' allegations relating to the alleged inventory stockpile of unsaleable reactors.

---

[6] *See* Veeco Form 8-K, dated November 4, 2003, Ex. 99.1 (Press Release, Veeco Purchases Emcore's TurboDisc Business (Nov. 3, 2003)) (Serio Decl. Ex. A).

### III. The Court Erred In Assessing Plaintiffs' Scienter Allegations Under The Group Pleading Doctrine

Plaintiffs' allegations relating to the Sanan Group Contract and the purported inventory stockpile of unsaleable reactors were bolstered by the Court's application of the group pleading doctrine. *See* Order at 18-19.

Most respectfully, the Court erred in assessing plaintiffs' scienter allegations under the group pleading doctrine. *See Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 154 F. Supp. 2d 696, 702 (S.D.N.Y. 2001) (McMahon, J.) (granting motion for reconsideration because "my application of section 2711(a)(3) to the Management Agreement and the other agreements . . . was in error").

The group pleading doctrine creates a presumption regarding corporate statements – *i.e.*, that "statements in prospectuses, registration statements, annual reports, press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company." *In re BISYS Secs. Litig.*, 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005). "It simply recognizes, solely for pleading purposes, that some corporate documents, including SEC filings and the like, generally are not created by a single author, but by a group of corporate insiders involved in the daily management of a company." *Id.* at 440.

Defendants did not mean to argue, as the Court's Order states, that the group pleading doctrine "is no longer good law in light of the PSLRA." Order at 18. Rather, consistent with Southern District authority, defendants argued that the group pleading doctrine cannot be applied to create an additional presumption regarding knowledge of the falsity of the corporate

7

statements.[7] It is well established that the group pleading doctrine does not do away with the requirement that there be particularized allegations of scienter with respect to each individual defendant:

- *In re BISYS Secs. Litig.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005) (Kaplan, J.) ("[T]he group pleading doctrine has no effect on the PSLRA's *scienter* requirement. It merely gives plaintiffs the benefit of a presumption that certain kinds of statements were made by certain kinds of defendants. It does not permit plaintiffs to presume the state of mind of those defendants at the time the alleged misstatements were made.") (emphasis in original).

- *Faulkner v. Beer*, 2005 WL 476976, at *8 (S.D.N.Y. Feb. 28, 2005) (Daniels, J.) (rejecting plaintiffs' assertion that "under the Group Publication Doctrine, all the Defendants, including Matthews, are directly liable for the false and misleading statements made in Nustar's offering memorandum and annual reports" because "Plaintiffs have not pled sufficient facts to demonstrate that Defendant Matthews had knowledge of any material misstatements or omissions made to Plaintiffs regarding their investment in Nustar").

- *In re Citigroup, Inc. Secs. Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) (Swain, J.), *aff'd sub nom. Albert Fadem Trust v. Citigroup Inc.*, 2006 WL 276611 (2d Cir. Feb. 6, 2006) ("Although the group pleading doctrine may be sufficient to link the individual defendants to the allegedly false statements, Plaintiff must also allege facts sufficient to show that the Defendants had knowledge that the statements were false at the time they were made.").

- *Jacobs v. Coopers & Lybrand, L.L.P.*, 1999 WL 101772, at *17 (S.D.N.Y. Mar. 1, 1999) (Patterson, J.) ("[E]ven under the group pleading doctrine, a complaint must allege that the defendants are insiders or affiliates and must allege particular facts demonstrating the knowledge of each of the defendants at the time that the statements were false.").

- *Ackerman v. National Property Analysts, Inc.*, 887 F. Supp. 494, 505 (S.D.N.Y. 1992) (Freeh, J.) ("Generally, to survive a Rule 9(b) motion, a plaintiff claiming fraud must apprise each defendant of the scope of his or her participation in the alleged fraud. However, in certain situations, a plaintiff's complaint may withstand a Rule 9(b) challenge where plaintiff alleges that an offering memorandum was fraudulent and that defendants conspired together to mislead the plaintiff. *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986).

---

[7] *See* Defendants' Memorandum of Law, dated January 10, 2006, at 6.

8

> The *Luce* exception however, only applies to a complaint which alleges 'particular facts demonstrating the knowledge of the defendants at the time that such statements were false.' *Luce*, 802 F.2d at 57. Moreover, the *Luce* exception does not relieve a plaintiff from properly pleading allegations which demonstrate that each defendant knew or had reason to know of the false statements and material omissions in the offering material.").

In holding that "plaintiffs sufficiently plead scienter under the 'group pleading' doctrine" (Order at 18), the Court's Order suggests that the group pleading doctrine is a scienter doctrine. But it is not. As the cases above make clear, the group pleading doctrine addresses the issue of what allegations are sufficient to attribute corporate statements to individual defendants. The doctrine does not resolve the distinct issue of what allegations are sufficient to plead an individual defendant's knowledge that a corporate statement was false at the time it was made.

The district court decision in *In re Atlas Air Worldwide Holdings, Inc. Secs. Litig.*, 324 F. Supp. 2d 474 (S.D.N.Y. 2004) (Order at 19) did not hold that group pleading could be used in lieu of individualized allegations of scienter. Instead, the district court in *Atlas* held only that, in the circumstances of that case, knowledge about certain facts that would be inconceivable for the company's officers not to know – *i.e.*, "contradictory facts of critical importance to the company" and "market conditions substantially affecting the core operations" of the company – would be imputed to the company's officers. *Id.* at 489-91. Even with the imputation of those facts, the district court in *Atlas* still undertook an individualized analysis of plaintiffs' scienter allegations with respect to each individual defendant. *Id.* at 496-97.

*Atlas* has no application here. The alleged "contradictory facts" at issue are not of such "critical importance" so as to be imputed to Messrs. Braun, Rein or Kiernan. For example, plaintiffs' allegations relating to the Sanan Group Contract concern the timing of approximately $9.5 million in revenue recognition spread across the first three quarters of 2004 on one contract in China. *See* CAC ¶ 59. As noted above, Veeco has offices and manufacturing sites in

9

12 countries. *See* Serio Decl. Ex. G. Moreover, the $9.5 million at issue in connection with the Sanan Group Contract amounted to only 3% of the approximately $290 million in net sales reported by Veeco during the first three quarters of 2004. *See* CAC ¶¶ 59, 119. Under these circumstances, the intimate details of the accounting for the Sanan Group Contract cannot be imputed to Messrs. Braun, Rein and Kiernan. In fact, the entire restatement amounted to only a $10.2 million decrease in pre-tax earnings. *See* Serio Decl. Ex. D, at 5. Thus, unlike in *Atlas* where the restatement was "dramatic" because "Atlas was transformed from a company with retained earnings of approximately $185 million to a company with an accumulated deficit of approximately $178 million," the restatement here was relatively small and does not come close to suggesting that there were "systemic accounting abuses within [the company]" that defendants recklessly disregarded. *Atlas*, 324 F. Supp. 2d at 489.[8]

Moreover, *Atlas* does not support a generalized group pleading scienter doctrine. Indeed, if the group pleading doctrine could be used to plead scienter, then the mere fact of a corporate restatement of prior financial statements always would be sufficient to plead a securities fraud claim against a company's officers. That is not the law. *See, e.g., In re Bristol-Myers Squibb Secs. Litig.*, 312 F. Supp. 2d 549, 565 (S.D.N.Y. 2004) (dismissing securities complaint against company's officers, *including CEO and CFO*, notwithstanding restatement; "A restatement of financial results or 'allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim.' Thus,

---

[8] The restatement here likewise did not reveal the kind of "in your face facts that cry out how could [defendant] not have known that the financial statements were false" at issue in *In re Oxford Health Plans, Inc. Secs. Litig.*, 51 F. Supp. 2d 290, 294 (S.D.N.Y. 1999).

the Restatement alone does not provide a basis for inferring scienter.") (quoting *Chill v. General Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1995)).

Accordingly, defendants respectfully request that the Court undertake an individualized analysis of plaintiffs' scienter allegations with respect to each of Messrs. Braun, Rein and Kiernan. As set forth in defendants' motion to dismiss, plaintiffs have not, as they must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that [Messrs. Braun, Rein or Kiernan] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).[9]

---

[9] *See* Defendants' Memorandum of Law, dated December 2, 2005, at 12-25; Defendants' Memorandum of Law, dated January 10, 2006, at 4-10.

11

## CONCLUSION

For all these reasons, defendants Veeco Instruments Inc., Edward H. Braun, John F. Rein, Jr. and John P. Kiernan respectfully request that this Court grant their motion for partial reconsideration, dismiss plaintiffs' claims relating to the Sanan Group Contract and alleged inventory overstatement of TurboDisc reactors, clarify that the group pleading doctrine is no substitute for individualized allegations of scienter and award such other and further relief as the Court deems appropriate.

Dated:  New York, New York
        April 5, 2006

                                    GIBSON, DUNN & CRUTCHER LLP

                                    By: _____
                                        John A. Herfort (JH-1460)
                                        Robert F. Serio (RS-2479)
                                        J. Ross Wallin (JW-3911)

                                    200 Park Avenue
                                    New York, New York 10166-0193
                                    Phone: (212) 351-4000
                                    Fax: (212) 351-4035

                                    Attorneys for Defendants
                                    Veeco Instruments Inc., Edward H. Braun,
                                    John F. Rein, Jr. and John P. Kiernan