# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------- x
In re VEECO INSTRUMENTS, INC.          :        Case No.: 7:05-md-01695 (CM)
SECURITIES LITIGATION                  :
-------------------------------------------------- x
-------------------------------------------------- x
THIS DOCUMENT RELATES TO               :
ALL ACTIONS                            :
-------------------------------------------------- x
```

## DECLARATION OF JEFFREY L. OSTERWISE IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION TO VACATE AND REVERSE THE DISCOVERY ORDER OF MAGISTRATE JUDGE GEORGE A. YANTHIS SIGNED JANUARY 24, 2007 PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72

Jeffrey L. Osterwise, hereby declares as follows:

I, Jeffrey L. Osterwise, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746

that the following is true and correct:

     1.     I am an associate of the law firm of Berger & Montague, P.C., lead counsel for Lead

Plaintiff in this litigation.

     2.     I submit this Declaration in further support of Lead Plaintiff's Motion to Vacate and

Reverse the Discovery Order of Magistrate Judge George A. Yanthis Signed January 24, 2007

Pursuant to Federal Rule of Civil Procedure 72.

     3.     Attached hereto as Exhibits are true and correct copies of the following:

| Exhibit No. | Description |
|---|---|
| A | Relevant portions of the Transcript of the Deposition of John Kiernan, dated February 27, 2007. |
| B | Relevant portions of the Rough Draft Transcript of the Deposition of John F. Rein, dated February 28, 2007. |

Dated: March 1, 2007

Jeffrey L. Osterwise

# EXHIBIT A

# ORIGINAL

1

2  UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

3  CASE NO.: 05-MD-1695 (CM)

4  --------------------------x

5  In Re:

6  VEECO INSTRUMENTS, INC.,

7  SECURITIES LITIGATION

8  --------------------------x

9

10

11      VIDEOTAPED DEPOSITION of JOHN KIERNAN,

12  a witness called by counsel for Plaintiffs, taken

13  pursuant to the Federal Rules of Civil Procedure

14  before Eileen Mulvenna, CSR/RMR and Notary Public

15  within and for the State of New York, taken at

16  the office of Milberg Weiss & Bershad, One Penn

17  Plaza, New York, New York on February 27th, 2007,

18  commencing at 10:17 a.m.

19

20

21

22

23

24

25

166

John Kiernan

| | |
|---|---|
| 1 | |
| 2 | Q.    Where was your office at the time, | 15:17:02 |
| 3 | this late 2004, early 2005 time period?  Not in | 15:17:04 |
| 4 | Somerset, was it? | 15:17:10 |
| 5 | A.    No, my office is based in the Veeco | 15:17:12 |
| 6 | corporate office in Woodbury. | 15:17:16 |
| 7 | Q.    And were there occasions on which | 15:17:20 |
| 8 | Jefferson Wells people came to Woodbury? | 15:17:27 |
| 9 | A.    Yes, they did. | 15:17:31 |
| 10 | Q.    And what did the Jefferson Wells | 15:17:32 |
| 11 | people do when they came to Woodbury? | 15:17:34 |
| 12 | A.    Principally two items, I recall. | 15:17:42 |
| 13 | The first item was when they reviewed the work | 15:17:46 |
| 14 | prepared by management with respect to the | 15:17:50 |
| 15 | revenue adjustments.  All of those accounting | 15:17:52 |
| 16 | records are kept at the Woodbury facility.  When | 15:17:54 |
| 17 | they reviewed the work, they reviewed that at | 15:17:59 |
| 18 | Woodbury. | 15:18:02 |
| 19 | And second, any presentations or | 15:18:04 |
| 20 | reports that they would have given to the audit | 15:18:09 |
| 21 | committee, they may have done in person or by | 15:18:13 |
| 22 | phone in Woodbury.  I'm not sure. | 15:18:17 |
| 23 | Q.    Did the audit committee meet at | 15:18:19 |
| 24 | Woodbury? | 15:18:21 |
| 25 | A.    The audit committee did meet in | 15:18:23 |

167

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | Woodbury.  I don't know, with respect to | 15:18:25 |
| 3 | specifically meetings during this time period, if | 15:18:29 |
| 4 | they were telephonic meetings or there were | 15:18:34 |
| 5 | meetings in Woodbury.  I don't recall. | 15:18:36 |
| 6 | Q.    I see. | 15:18:47 |
| 7 | What was the cost of what has been | 15:18:58 |
| 8 | described in Veeco documents as the investigation | 15:19:02 |
| 9 | that included -- that -- in which Jefferson Wells | 15:19:07 |
| 10 | did, in part which you've described and I assume | 15:19:10 |
| 11 | some other things -- | 15:19:14 |
| 12 | MR. HERFORT:  How much money was | 15:19:15 |
| 13 | Jefferson Wells paid? | 15:19:16 |
| 14 | MS. BRODERICK:  Oh, it wasn't only | 15:19:18 |
| 15 | Jefferson Wells that got paid. | 15:19:19 |
| 16 | Q.    Isn't that right? | 15:19:20 |
| 17 | MR. HERFORT:  What is the -- how is | 15:19:24 |
| 18 | this likely to lead to discoverable | 15:19:25 |
| 19 | evidence? | 15:19:27 |
| 20 | Q.    You can answer the question. | 15:19:28 |
| 21 | MR. HERFORT:  Wait a minute.  Wait. | 15:19:29 |
| 22 | You've got to put some parameters on | 15:19:31 |
| 23 | your question.  What costs are you talking | 15:19:33 |
| 24 | about? | 15:19:34 |
| 25 | Q.    There was an investigation; right? | 15:19:38 |

168

1                    John Kiernan

2    And Jefferson Wells got paid and at least one        15:19:39

3    other entity got paid.                               15:19:43

4             MR. HERFORT:  Who is that?                   15:19:45

5             MS. BRODERICK:  You know perfectly           15:19:46

6        well.                                             15:19:47

7        Q.     What was the cost of the                   15:19:49

8    investigation?                                        15:19:50

9             MS. BRODERICK:  Let's not waste              15:19:51

10       time.                                             15:19:52

11            MR. HERFORT:  I'm going to instruct          15:19:52

12       him not to answer.                                15:19:52

13            MS. BRODERICK:  You are?                      15:19:54

14            MR. HERFORT:  Yes.                            15:19:55

15            MS. BRODERICK:  You know you're not          15:19:55

16       supposed to do that.                              15:19:56

17            MR. HERFORT:  I think that gets into         15:19:57

18       the work product area.                            15:19:57

19            MS. BRODERICK:  The cost of an               15:19:58

20       investigation --                                  15:20:00

21            MR. HERFORT:  The checks that they           15:20:00

22       wrote to Jefferson Wells and Kaye Scholer         15:20:01

23       for work product --                               15:20:04

24            MS. BRODERICK:  For one thing, for           15:20:05

25       God's --                                          15:20:06

169

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | MR. HERFORT: Carole, keep your | 15:20:07 |
| 3 | mouth shut and let me listen to him. Okay? | 15:20:08 |
| 4 | You've got to cool it. I want to -- let's | 15:20:11 |
| 5 | do this professionally. All right? | 15:20:13 |
| 6 | MS. BRODERICK: You should start. | 15:20:15 |
| 7 | MR. HERFORT: You start too. | 15:20:16 |
| 8 | Let me talk to -- Mr. Wallin wants | 15:20:17 |
| 9 | to talk to me. Let me talk to him. Don't | 15:20:18 |
| 10 | start yelling. | 15:20:21 |
| 11 | (Discussion off the record.) | 15:20:21 |
| 12 | (Counsel leave the room.) | 15:20:24 |
| 13 | THE VIDEOGRAPHER: 3:21 p.m. We're | 15:20:40 |
| 14 | going off the record. | 15:20:41 |
| 15 | (Recess from the record.) | 15:20:43 |
| 16 | THE VIDEOGRAPHER: Time is 3:30 p.m. | 15:30:19 |
| 17 | We're back on the record. | 15:30:21 |
| 18 | MR. HERFORT: Miss Broderick has | 15:30:23 |
| 19 | some questions involving numbers, and let's | 15:30:24 |
| 20 | proceed and have them -- | 15:30:26 |
| 21 | MS. BRODERICK: Would you read the | 15:30:28 |
| 22 | question back and maybe this time he'll | 15:30:28 |
| 23 | answer it. | 15:30:31 |
| 24 | MR. HERFORT: -- have them asked. | 15:30:32 |
| 25 | (Record read.) | 15:30:42 |

170

John Kiernan

```
 1
 2      A.    My recollection was in the range of      15:30:42
 3  about $800,000.                                    15:30:46
 4      Q.    And is that cost approximately what      15:31:00
 5  Veeco expected when the investigation was          15:31:01
 6  started?                                           15:31:05
 7      A.    I don't recall what our initial          15:31:09
 8  estimate was.                                      15:31:11
 9      Q.    Well, let's come at it another way.      15:31:14
10            Did the cost of the investigation        15:31:16
11  come as a shock to you?  And by "you," I mean      15:31:18
12  Veeco and not you personally, Mr. Kiernan.         15:31:20
13      A.    No, I don't believe so.                  15:31:25
14      Q.    And what was Veeco getting for the       15:31:29
15  $800,000?                                          15:31:30
16            MR. HERFORT:  Let's just -- haven't      15:31:34
17        you really covered at some length the        15:31:39
18        actual work that was done?                   15:31:41
19            MS. BRODERICK:  Let me decide.           15:31:43
20            MR. HERFORT:  You do have some           15:31:45
21        rights, that's true.                         15:31:46
22            MS. BRODERICK:  Yes, I do.  You          15:31:47
23        know, what amendment was it that gave us     15:31:48
24        the vote?                                    15:31:50
25            MR. HERFORT:  It's not what we're        15:31:51
```

171

John Kiernan

1    talking about.                                15:31:52

2        MS. BRODERICK:  I know you'd rather       15:31:54

3    appeal it, but it's not for you to do.        15:31:55

4        MR. HERFORT:  I really wouldn't.  It      15:31:57

5    makes for an interesting political system     15:31:58

6    to have characters like you voting.           15:32:01

7        MS. BRODERICK:  Careful or you'll         15:32:03

8    get Hillary Clinton.                          15:32:04

9        Now, let him answer the question.         15:32:07

10        MS. HIRSH:  I'm sorry.                    15:32:09

11        MR. HERFORT:  Maybe I like --            15:32:11

12        MS. HIRSH:  Right after reading the       15:32:13

13    headline about the Dow falling of 500         15:32:14

14    points.                                       15:32:19

15        MS. BRODERICK:  Oh, really?  500?        15:32:19

16        MS. HIRSH:  Something to do with          15:32:20

17    China.                                        15:32:21

18        MS. BRODERICK:  Let's let him answer     15:32:23

19    the question.  You know you're not allowed    15:32:24

20    to instruct him not to answer except on the   15:32:26

21    grounds of privilege.                         15:32:28

22        MR. HERFORT:  You might be getting        15:32:29

23    near.                                         15:32:30

24        MS. BRODERICK:  Well, near is not        15:32:30

172

| | John Kiernan | |
|---|---|---|
| 1 | | |
| 2 | good enough. | 15:32:31 |
| 3 | MR. HERFORT:  You were interested, | 15:32:32 |
| 4 | having gone over the basic work that | 15:32:32 |
| 5 | they've done for the last hour and a half. | 15:32:35 |
| 6 | You want him to repeat it again? | 15:32:36 |
| 7 | MS. BRODERICK:  No.  I asked him a | 15:32:39 |
| 8 | question.  If you're going to instruct him | 15:32:40 |
| 9 | not to answer, at your peril, then do so; | 15:32:41 |
| 10 | if you're not, then -- | 15:32:44 |
| 11 | MR. HERFORT:  If you can answer the | 15:32:44 |
| 12 | question without getting into the | 15:32:45 |
| 13 | impressions and conclusions of the people | 15:32:46 |
| 14 | who did the work for you, answer it. | 15:32:47 |
| 15 | A.    My understanding is that of the | 15:32:51 |
| 16 | $800,000, that was principally paid to three | 15:32:54 |
| 17 | firms.  That it was paid to Ernst & Young for | 15:33:02 |
| 18 | additional audit work that they performed.  It | 15:33:07 |
| 19 | was paid to Kaye Scholer to lead the | 15:33:12 |
| 20 | investigation.  And it was paid to Jefferson | 15:33:15 |
| 21 | Wells for the work they performed. | 15:33:18 |
| 22 | Q.    And is it -- what was your | 15:33:21 |
| 23 | understanding about -- I understand who you paid | 15:33:26 |
| 24 | it to -- about what you got for your $800,000? | 15:33:30 |
| 25 | It's a lot of money. | 15:33:35 |

173

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | MR. HERFORT:  Read the question back | 15:33:37 |
| 3 | again, please. | 15:33:38 |
| 4 | (Record read.) | 15:33:39 |
| 5 | MR. HERFORT:  I'll object as to | 15:33:55 |
| 6 | form. | 15:33:55 |
| 7 | I think this has been gone over and | 15:33:56 |
| 8 | over and over again for the last two hours. | 15:34:00 |
| 9 | MS. BRODERICK:  Cry. | 15:34:03 |
| 10 | A.    My recollection is that each one of | 15:34:07 |
| 11 | those three firms billed to Veeco on an hourly | 15:34:08 |
| 12 | basis for the work that they performed. | 15:34:13 |
| 13 | Q.    Let me put it a different way. | 15:34:16 |
| 14 | What purpose -- what benefit did you | 15:34:20 |
| 15 | derive for the $800,000 that you paid to these | 15:34:25 |
| 16 | people? | 15:34:30 |
| 17 | A.    The audit committee engaged Kaye | 15:34:36 |
| 18 | Scholer to perform an investigation under their | 15:34:40 |
| 19 | direction, and they're reporting directly into | 15:34:42 |
| 20 | the audit committee.  I'm not privileged to what | 15:34:47 |
| 21 | they performed in that regard. | 15:34:50 |
| 22 | Work performed by Ernst & Young | 15:34:56 |
| 23 | included additional audit procedures to review | 15:34:59 |
| 24 | the adjustments and the account analysis that was | 15:35:06 |
| 25 | performed that was outside of the original scope | 15:35:08 |

174

1                        John Kiernan

2     of their intended audit work, and that Ernst &        15:35:10

3     Young did these additional procedures in order to      15:35:14

4     be able to render an opinion on the financial          15:35:17

5     statements, which they ended up rendering their        15:35:20

6     opinion on the financial statements.                   15:35:24

7                    Jefferson Wells reviewed the work       15:35:28

8     that was performed by management and also did          15:35:32

9     forensic work.                                         15:35:35

10        Q.      And what benefit did the company           15:35:37

11    derive from that?                                      15:35:39

12        A.      I think that was -- the work that          15:35:52

13    was performed by Jefferson Wells enabled Ernst &       15:35:54

14    Young to be able to render their opinion on            15:36:02

15    Veeco's financial statements, and that was a           15:36:09

16    requirement.                                           15:36:13

17        Q.      Did the work done by Jefferson Wells       15:36:16

18    also enable Ernst & Young to render their opinion      15:36:19

19    on Veeco's internal controls?                          15:36:24

20        A.      I believe they considered the work         15:36:36

21    performed, but I don't know what -- the exact          15:36:37

22    reliance that they may have attributed to the          15:36:41

23    work performed by Jefferson Wells.                     15:36:45

24        Q.      Okay.  Did there come a time in the        15:36:47

25    third quarter of 2004 that you, Mr. Kiernan,           15:37:44

# EXHIBIT B

ROUGH ASCII VEECO-REIN 2-28-07

1

```
 1       UNPROOFREAD/UNCERTIFIED ROUGH DRAFT ONLY

 2      Reporter's Name:  EILEEN MULVENNA, CSR/RMR
        ----------------------------------------------
 3      REALTIME/INTERACTIVE ROUGH DRAFT TRANSCRIPT
         AND/OR UNCERTIFIED REALTIME ASCII DISCLAIMER
 4      ----------------------------------------------
               IMPORTANT NOTICE:
 5             - AGREEMENT OF PARTIES -
         PROCEEDING BEYOND THIS PAGE CONSTITUTES
 6      ACCEPTANCE OF AND AGREEMENT WITH THE FOLLOWING
                TERMS AND CONDITIONS
 7      ----------------------------------------------
        We, the party working with realtime and rough
 8      draft transcripts and/or ASCII disks, understand
        that if we choose to use the realtime rough draft
 9      screen, the rough printout, or the unedited ASCII
        disk, that we are doing so with the understanding
10      that all rough drafts are uncertified copies
        and...
11
        WE AGREE THEY WILL BE BILLED TO AND PAID FOR BY
12      US

13      We further agree not to comment in the record on,
        share, give, copy, scan, fax or in any way
14      distribute this realtime rough draft or ASCII in
        any form (written or computerized) to any party.
15      However, our own experts, co-counsel, and staff
        may have limited internal use of same with the
16      understanding that we agree to destroy our
        realtime rough drafts and/or any computerized
17      form, if any, and replace it with the final
        transcript/ASCII disk upon its completion.
18
        REPORTER'S NOTE:
19
        Since this deposition has been recorded by me in
20      realtime and is in rough draft form, please be
        aware that there may be discrepancies regarding
21      page and line number when comparing the realtime
        screen, the rough draft/uncertified transcript,
22      rough draft/uncertified ASCII disk, and the final
        transcript/ASCII disk.
23

24

25
```

2

```
 1       UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

 2      Also please be aware that the realtime screen and
        the uncertified rough draft transcript/ASCII disk
 3      may contain untranslated steno, reporter's notes
        as parentheticals, misspelled proper names,
 4      incorrect or missing Q/A symbols or punctuation,
        and/or nonsensical English word combinations.
```

Page 1

ROUGH ASCII VEECO-REIN 2-28-07

5    All such entries will be correct on the final,
     certified transcript/ASCII disk.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                    3

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2              THE VIDEOGRAPHER:  Good morning.      09:27:10

3    We're on the record.  Today's date is          10:13:09

4    February 28, 2007.  The time is 10:15 a.m.     10:13:11

5                                                   10:13:15

6              This is the videotape deposition of  10:13:16

7    John F. Rein in the case of In Re: Veeco        10:13:19

8    Instruments, Inc., Securities Litigation.      10:13:25

9    Case No. 05-MD-1695.  This case is part of     10:13:27

10   the United States District Court for the       10:13:33
                        Page 2

ROUGH ASCII VEECO-REIN 2-28-07

25        the record.  The time is 5:01 p.m.                16:58:18
                                                   230

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2    BY MS. BRODERICK:                                   16:58:22

3        Q.     How much did Veeco spend on the          16:58:26

4    investigation that you described in the affidavit   16:58:30

5    that you swore to that was filed in this action     16:58:43

6    in the federal District Court?                      16:58:48

7             MR. SERIO:  I'm sorry could I have         16:58:56

8         that read back, please.                        16:58:57

9             (Record read.)                             16:59:07

10             MR. SERIO:  Objection to form.  You        16:59:08

11         mean outside counsel fees?                     16:59:09

12             MS. BRODERICK:  The whole thing.          16:59:11

13        A.     I think there was a disclosure in       16:59:16

14    the 10-K that enumerated a number like eight or    16:59:17

15    900,000 but I don't specifically recall.           16:59:23

16        Q.     And wasn't the product that             16:59:36

17    investigation needed for you to obtain Ernst &     16:59:43

18    Young's opinions on Veeco's financial statements   16:59:51

19    and its internal controls?                         16:59:57

20             MR. SERIO:  Objection to the form.        17:00:00

21        A.     I'm sorry, what investigation are       17:00:02

22    you referring to?                                   17:00:04

23        Q.     The financial statement -- the          17:00:06

24    investigation you just testified about, the cost   17:00:08

25    of which you said was disclosed in Veeco's public  17:00:10
                                                   231

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2    document.                                           17:00:15

3        A.     The audit committee selected Kaye        17:00:16

4    Scholer and Jefferson Wells to assist in            17:00:21
                        Page 190

ROUGH ASCII VEECO-REIN 2-28-07

5    litigation, anticipation of litigation                17:00:28
6    preparation to evaluate and to give counsel and       17:00:32
7    guidance to the company.  In addition to              17:00:36
8    performing some analysis and forensic work in         17:00:39
9    regard -- in regard to ensuring that the accounts     17:00:46
10   were properly stated and the financial statements     17:00:52
11   were properly stated.                                 17:00:57
12            MS. BRODERICK:  Could you read the           17:00:59
13        question back.                                   17:00:59
14            (Record read.).                              17:01:00
15            MR. SERIO:  Objection to form.               17:01:18
16            MS. BRODERICK:  It's product of the          17:01:20
17        investigation.                                   17:01:21
18            THE REPORTER:  (Nods head in the             17:01:24
19        affirmative.)                                    17:01:24
20            MR. SERIO:  Could you hear that?  I          17:01:26
21        couldn't hear it when you were reading it        17:01:27
22        back.                                            17:01:29
23            (Discussion off the record.)                 17:01:47
24            (Record read.)                               17:01:48
25            MR. SERIO:  Objection to form.               17:01:57
                                              232

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2        Q.    You can answer the question?                17:02:13
3        A.    I think I thought I did answer the          17:02:15
4    question, but a portion of that investigative         17:02:17
5    activity was used to assist us in -- us being         17:02:23
6    Veeco financial management in creating and            17:02:29
7    correcting -- creating the required entries and       17:02:33
8    adjustments and developing financial statements       17:02:39
9    on a correct basis and so a portion of that           17:02:46

ROUGH ASCII VEECO-REIN 2-28-07

10  activity was in that -- in assistance in that          17:02:52
11  regard.  And that was required before Ernst &          17:02:56
12  Young could audit our and given an opinion on our       17:02:59
13  December 31, 2004, financial statements.                17:03:03
14        Q.     So it was necessary for Ernst &            17:03:06
15  Young's opinion; right?                                 17:03:08
16               MR. SERIO:  Objection to the form.         17:03:10
17        A.     A portion of the activities were           17:03:11
18  necessary.                                              17:03:13
19        Q.     That's the audit opinion; is that          17:03:14
20  correct?                                                17:03:16
21               MR. SERIO:  Objection to the form.         17:03:16
22        Q.     Meaning the opinion on Ernst &             17:03:18
23  Young -- on Veeco's financial statements; right?        17:03:20
24        A.     We --                                      17:03:27
25               (Telephone interruption.)                  17:03:29
                                                  233

1   UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2                MS. BRODERICK:  Good grieve.  I            17:03:32
3          thought it was his stomach.                      17:03:34
4         A.     I'd like to just clarify what the          17:03:41
5   question --                                             17:03:43
6         Q.     Okay.  You described financially --        17:03:44
7   financial statement activity that was being             17:03:49
8   performed by Jefferson Wells; isn't that correct?       17:03:51
9         A.     Well, I described financial activity       17:03:54
10  was being performed by Veeco financial management       17:03:56
11  and there was some assistance based on some of          17:04:01
12  the work that Jefferson Wells did.                       17:04:03
13        Q.     Yes.  And then you testified, did          17:04:06
14  you not that had that activity was necessary for        17:04:08
15  Ernst & Young to issue its opinion; is that             17:04:13
                    Page 192

ROUGH ASCII VEECO-REIN 2-28-07

16    correct?                                              17:04:15
17                MR. SERIO:  Objection to the form.        17:04:16
18                (Telephone interruption.)                 17:04:17
19                MS. BRODERICK:  Turn it off.              17:04:20
20                MR. SERIO:  Sorry.                        17:04:24
21                MS. BRODERICK:  How many do you           17:04:25
22        have?                                             17:04:26
23                (Telephone interruption.)                 17:04:30
24                (Discussion off the record.)              17:04:40
25        Q.    Okay?                                        17:04:48
                                                    234

1     UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2         A.    It was necessary for Veeco              17:04:48
3     management to get their financial accounts and   17:04:50
4     financial statements correct before Ernst & Young 17:04:54
5     would certify to our statements or we could ask   17:04:56
6     them to review and audit the underlying financial 17:05:01
7     statements.  And part of the Jefferson Wells'     17:05:05
8     activity was utilized to assist us in verifying   17:05:09
9     that the accounts were correct.                   17:05:15
10        Q.    So part of the Jefferson Wells'         17:05:16
11    activity was an activity which was engaged in for 17:05:18
12    the purpose of correcting records which was       17:05:28
13    necessary to do to get Ernst & Young to certify   17:05:31
14    Veeco's financial statements; is that correct?    17:05:37
15                MR. SERIO:  Objection to the form.    17:05:40
16        A.    It was -- we utilized Jefferson         17:05:43
17    Wells' activity to verify that what management    17:05:47
18    had come up with, which is what Ernst & Young was 17:05:51
19    looking at, was accurate.                         17:05:55
20        Q.    Okay.  So part of what Jefferson        17:05:58
                        Page 193

ROUGH ASCII VEECO-REIN 2-28-07

| | | |
|---|---|---|
| 21 | Wells was doing was used to get Ernst & Young to | 17:06:00 |
| 22 | issue an opinion on Veeco's financial statements; | 17:06:07 |
| 23 | isn't that right? | 17:06:10 |
| 24 | MR. SERIO:  Objection to the form. | 17:06:11 |
| 25 | Asked and answered. | 17:06:12 |

235

| | | |
|---|---|---|
| 1 | UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY | |
| 2 | A.    I think I did answer it. | 17:06:13 |
| 3 | Q.    It's yes or no; is that correct? | 17:06:15 |
| 4 | MR. SERIO:  Objection to the form. | 17:06:17 |
| 5 | A.    I don't think it is.  I don't think | 17:06:18 |
| 6 | it is yes or no.  I think I gave my explanation. | 17:06:19 |
| 7 | Q.    What was the Jefferson Wells' work | 17:06:24 |
| 8 | on Veeco's fixing up TurboDisc's records used | 17:06:28 |
| 9 | for? | 17:06:35 |
| 10 | MR. SERIO:  Objection to the form. | 17:06:37 |
| 11 | A.    I described that Veeco management -- | 17:06:38 |
| 12 | financial management did the analysis and the | 17:06:42 |
| 13 | correction of the errors that were uncovered. | 17:06:49 |
| 14 | And that a portion of what Jefferson Wells' work | 17:06:52 |
| 15 | was utilized to verify that the amounts and | 17:06:58 |
| 16 | correction of errors that Veeco management, | 17:07:04 |
| 17 | financial management had established were in fact | 17:07:07 |
| 18 | verified by some of the work that Jefferson Wells | 17:07:12 |
| 19 | did. | 17:07:14 |
| 20 | Q.    And is it also correct that Veeco | 17:07:16 |
| 21 | gave Ernst & Young Jefferson Wells' work to show | 17:07:19 |
| 22 | Ernst & Young that Jefferson Wells agreed with | 17:07:27 |
| 23 | Veeco management? | 17:07:31 |
| 24 | MR. SERIO:  Objection to the form. | 17:07:32 |
| 25 | A. | 17:07:37 |

236

Page 194

ROUGH ASCII VEECO-REIN 2-28-07

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2              THE WITNESS:  Repeat that, please.        17:07:37

3         I just like to make sure I understand every    17:07:38

4         word in that question.                         17:07:41

5              (Record read.).  Select                   17:07:56

6         A.    Selected schedules that management       17:08:06

7    used in verifying its correction of the errors in   17:08:07

8    the accounts may have been given to Ernst & Young   17:08:15

9    and some of those work papers may have come from    17:08:18

10   Jefferson Wells.                                     17:08:21

11        Q.    Wait a minute.  Did Veeco give Ernst      17:08:24

12   & Young any documents that showed that Jefferson    17:08:31

13   Wells agreed with Veeco management about Veeco      17:08:34

14   management's correction of TurboDisc accounts?      17:08:40

15             MR. SERIO:  Objection to form.            17:08:46

16        A.    I know that there was a report that       17:08:47

17   was prepared for the audit committee and for Kaye   17:08:48

18   Scholer and I believe that that report was shared   17:08:52

19   with Ernst & Young.  I don't know what purpose      17:08:56

20   that Ernst & Young found with that report.  I       17:08:59

21   also know that were certain analysis there were     17:09:03

22   done by Jefferson Wells personnel that were         17:09:06

23   utilized by Veeco management and may have been      17:09:10

24   reviewed by Ernst & Young in establishing that      17:09:12

25   the accounts were proper and the financial          17:09:14

                                                 237

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2    statements were proper.                             17:09:16

3         Q.    And those analyses said we,              17:09:18

4    Jefferson Wells, agree with Veeco's management;     17:09:21

5    is that correct?                                    17:09:23

                    Page 195

```
                     ROUGH ASCII VEECO-REIN 2-28-07
  6                MR. SERIO:  Objection to the form.            17:09:24

  7       I don't -- I think I would instruct him not           17:09:26

  8       to answer as to the substance of what the             17:09:29

  9       Jefferson Wells report said.  So you don't            17:09:32

 10       immediate to answer.                                  17:09:35

 11           Q.    And you refuse to answer?                   17:09:38

 12           A.    On advice of counsel, I --                  17:09:40

 13           Q.    Okay.  Are you prepared to tell me          17:09:42

 14       whether Jefferson Wells' work played any part in      17:09:45

 15       obtaining Ernst & Young's audit opinion on            17:09:53

 16       Veeco's financial statements?                         17:09:58

 17           A.    I think --                                  17:09:59

 18                 MR. SERIO:  Objection to the form.          17:10:00

 19           A.    I think I previously described that.        17:10:01

 20           Q.    No, this is a yes or no.  So far as         17:10:04

 21       you're aware, did Jefferson Wells' work play any      17:10:06

 22       part in obtaining Ernst & Young's audit opinion       17:10:09

 23       on Veeco's financial statements?                      17:10:14

 24                 MR. SERIO:  Objection to the form.          17:10:15

 25           A.    Jefferson Wells performed certain           17:10:17
                                                   238
```

```
  1       UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

  2       analysis and assisted Veeco management in            17:10:20

  3       preparing the corrected errors and financial         17:10:23

  4       statements and that information was presented to     17:10:26

  5       Ernst & Young prior to them issuing their            17:10:31

  6       opinion.                                             17:10:32

  7           Q.    Okay.  Now, Ernst & Young issued           17:10:34

  8       another opinion in connection with Veeco's 2004      17:10:39

  9       10-K, didn't they?                                   17:10:45

 10                 MR. SERIO:  Objection to the form.         17:10:47

 11           A.    Could you tell me what you're             17:10:48
                              Page 196
```