UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                   :

IN RE VEECO INSTRUMENTS INC.     :      05 MD 1695 (CM)(GAY)
SECURITIES LITIGATION            :
                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                   :

THIS DOCUMENT RELATES TO:     :
ALL ACTIONS                :
                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO PRODUCE ELECTRONIC DISCOVERY

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

*Attorneys for Defendants Veeco*
*Instruments Inc., Edward H. Braun,*
*John F. Rein, Jr., and John P. Kiernan*

March 5, 2007

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

      A.    Lead Plaintiff's Motion is Untimely and Prejudicial ................................. 3

      B.    Defendants Have Conducted Extensive Discovery .................................. 6

ARGUMENT........................................................................................................9

I.     DEFENDANTS PRODUCED A SIGNIFICANT AMOUNT OF
      DOCUMENTS DURING DISCOVERY AND ACTED IN
      GOOD FAITH AT ALL TIMES ........................................................ 9

II.    VEECO'S BACKUP TAPES ARE NOT REASONABLY ACCESSIBLE
      AND LEAD PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR
      ORDERING DEFENDANTS TO RESTORE AND SEARCH THEM.............. 12

      A.    Restoring and Searching Veeco's Backup Tapes Would Require
           Undue Burden and Cost ...................................................... 12

      B.    Lead Plaintiff Cannot Establish Good Cause........................................... 13

           1.    The specificity of the discovery request ...................................... 14

           2.    The quantity of information available from other and more
                easily accessed sources ................................................. 16

           3.    The failure to produce relevant information that seems likely to
                have existed but is no longer available on more easily accessed
                sources, the likelihood of finding relevant, responsive
                information that cannot be obtained from other, more easily
                accessed sources, and predictions as to the importance and
                usefulness of the further information........................................... 16

           4.    The importance of the issues at stake in the litigation ................. 18

           5.    The parties' resources................................................. 18

III.   IF THE COURT WERE TO ORDER FURTHER DISCOVERY, THE
      COSTS SHOULD BE SHIFTED TO LEAD PLAINTIFF ................................. 19

CONCLUSION........................................................................................................ 22

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bethea v. Comcast,*
    *218 F.R.D. 328 (D.D.C. 2003)* ................................................................. 16

*Byers v. Illinois State Police,*
    *2002 WL 1264004, at \*11 (N.D. Ill. June 3, 2002)* ................................ 10

*Cognex Corp. v. Electro Scientific Indus., Inc.,*
    *2002 WL 32309413, at \*3 (D. Mass. July 2, 2002)* ....................... 10, 11, 13, 17, 18

*Hagemeyer North Am., Inc. v. Gateway Data Scis. Corp.,*
    *222 F.R.D. 594 (E.D. Wis. 2004)* ........................................................ 10, 13

*McPeek v. Ashcroft,*
    *202 F.R.D. 31 (D.D.C. 2001)* ........................................................ 11, 13, 16

*Medtronic Sofamor Danek, Inc. v. Michelson,*
    *229 F.R.D. 550 (W.D. Tenn. 2003);* ....................................................... 10

*Rowe Entm't, Inc. v. William Morris Agency,*
    *205 F.R.D. 421 (S.D.N.Y. 2002)* ........................................................ 10, 13

*Zubulake v. UBS Warburg LLC,*
    *216 F.R.D. 280 (S.D.N.Y. 2003)* ........................................................ 18, 21

*Zubulake v. UBS Warburg LLC,*
    *217 F.R.D. 309 (S.D.N.Y. 2003)* ....................................... 10, 12, 13, 14, 19, 20, 21

## Statutes

*Fed. R. Civ. P. 26(b)(2)(B)* ..................................................................... passim

*Fed. R. Civ. P. 26(b)(2)(C)* ..................................................................... passim

## Other Authorities

*Fed. R. Civ. P. 26 advisory committee notes (2006)* ................................... passim

Defendants Veeco Instruments Inc., Edward H. Braun, John F. Rein, Jr., and John P. Kiernan (collectively, the "Defendants") respectfully submit this memorandum in opposition to Lead Plaintiff Steelworkers Pension Trust's ("Lead Plaintiff") motion to compel Defendants to produce all non-privileged responsive documents that are stored electronically on backup tapes concerning Edward H. Braun, John F. Rein, Jr., John P. Kiernan, Gary Reifert, Scott Glassman, Lawrence Karp, and Frances Scally.

## PRELIMINARY STATEMENT

The extraordinary relief that Lead Plaintiff seeks – namely, the restoration of dozens of inaccessible backup tapes covering a twenty-one month time period – is not warranted because, among other things, Lead Plaintiff has been inexcusably dilatory and has sought unsurprisingly to mask its dereliction by claiming "gotcha." In fact, Defendants many months ago made an extensive search for and production of documents from reasonably accessible sources, such as hard copy files, and electronic files maintained on individual computers as well as Veeco servers. That process resulted in the collection of millions of pages of documents, the review of hundreds of thousands of pages of documents, and the ultimate production of over 181,000 pages of documents, most of which were electronic files such as emails. Declaration of J. Ross Wallin ("Wallin Decl.") ¶ 15. Moreover, more than 43% of the electronic files produced by Defendants were from the files of, or otherwise concerned, one or more of the seven individuals from whom Lead Plaintiffs now seeks restoration of backup tapes. *Id.* The vast bulk of the documents – over 174,000 pages – were produced before the end of August 2006 – six months ago. *Id.* Lead Plaintiff never expressed any qualms about Defendants' collection and production of documents until approximately a month ago. *Id.* ¶¶ 6-7. Lead Plaintiff never asked about backup tapes,

restoration, cost-sharing issues, or any other factors that presumably would interest a party with even a remote interest in offline storage of electronic media. *Id.*

On April 6, 2006, Lead Plaintiff served its First Request for the Production of Documents. *Id.* ¶ 2. Lead Plaintiff served its request despite not having discussed or proposed entering into an electronic discovery protocol with Defendants. *Id.* ¶ 3. On May 9, 2006, a month after Lead Plaintiff served its document requests, Defendants served their Objections and Responses, which included objections that the requests were unduly burdensome and imposed requirements beyond those contemplated by the Federal Rules of Civil Procedure. *Id.* ¶ 4. In response to Defendants' objections, which included fifteen general objections as well as specific objections pertaining to each of Lead Plaintiff's fifty-nine individual document requests, Lead Plaintiff did nothing. Lead Plaintiff did not contest Defendants' objections, did not meet and confer, did not ask Defendants whether they were searching backup tapes, did not inquire into what data sources Defendants were searching, did not inquire into which custodians they intended to search or what search terms they planned to use, and, consistent with its decision to forego entering into an electronic discovery protocol, appeared to take no interest in Defendants' discovery plan and methodology. *Id.* ¶ 6.

Lead Plaintiff now seeks to impose on Defendants the extraordinary burden of restoring dozens of inaccessible backup tapes with only two months to go and after they have deposed Messrs. Braun, Rein, Kiernan, and others. Defendants should not be ordered to restore backup tapes at this stage of the discovery process. There is no presumption under the Federal Rules or the case law for imposing this extraordinary burden on Defendants at this late stage. Defendants estimate that the cost of restoring data from backup tapes and readying that data for review

would exceed $124,000. *Id.* ¶ 21. The cost to have attorneys review this additional information for privilege and responsiveness likely would be much higher.

Lead Plaintiff cannot make the showing of good cause required to justify this extraordinary burden. Virtually all of the factors that courts consider in evaluating this issue, such as the specificity of the discovery request, the quantity of information available from more easily accessible sources, and the likelihood that additional discovery will yield a significant amount of important and useful information, favor Defendants. Lead Plaintiff's discovery request here is extremely broad. Defendants have produced a wealth of information from more readily accessible sources concerning all of the key issues in the case, which strongly suggests that the utility of further document discovery would be minimal. For this reason, Defendants should not be required to restore *any* backup tapes.

Even if Lead Plaintiff were able to make the required showing of good cause, there is no basis for imposing any of the significant costs of further discovery on Defendants. Lead Plaintiff of course has no interest in bearing the costs of further discovery, even though the factors courts routinely consider in assessing cost shifting (which are similar to the factors considered in assessing whether a party has made the required showing of good cause), strongly favor Defendants.

In short, Lead Plaintiff's motion should be interpreted for what it is – a desperate attempt to increase the costs of litigation for Defendants.

## STATEMENT OF FACTS

### A.    <u>Lead Plaintiff's Motion is Untimely and Prejudicial</u>

Lead Plaintiff had ample opportunity to raise the issue of backup tapes with Defendants and the Court, but instead, through its lack of due diligence in conducting discovery and at great

prejudice to the parties, waited nearly eleven months after the start of discovery and more than six months after document discovery was substantially complete to address it. *Id.* ¶ 7.

Lead Plaintiff has been on notice that Defendants were not searching their backup tapes since the outset of document discovery. On May 9, 2006, Defendants served objections to Lead Plaintiff's document requests, which included objections that the requests were unduly burdensome and imposed requirements beyond those contemplated by the Federal Rules of Civil Procedure. *Id.* ¶ 4. There is no requirement under the Federal Rules that a party provide discovery of information from sources that are not reasonably accessible because of undue burden and costs. The burden and costs of restoring and searching backup tapes are significant, and thus Lead Plaintiff should have recognized as early as May 9, 2006 that Defendants were not restoring and searching their backup tapes in response to its document requests. Did Lead Plaintiff seriously think that Veeco was going to restore backup tapes without seeking a cost-sharing arrangement?

Yet, Lead Plaintiff did nothing. It did not seek to enter into an electronic discovery protocol with Defendants. *Id.* ¶ 3. It did not contest Defendants' objections, did not meet and confer, did not ask Defendants whether they were searching their backup tapes, did not inquire into what data sources Defendants were searching, did not inquire into which custodians they intended to search or what search terms they planned to use, and, consistent with its decision to forego entering into an electronic discovery protocol, appeared to take no interest in Defendants' discovery plan and methodology. *Id.* ¶ 6. Document discovery proceeded according to schedule and was substantially completed by the end of August 2006, less than five months after Lead Plaintiff served its document requests. *Id.* ¶ 5. There was not a single correspondence regarding

4

Defendants' objections to Lead Plaintiff's document requests or inquiry into any of the methods being employed by Defendants during that period. *Id.* ¶ 6.

Lead Plaintiff apparently did not become interested in these issues until the middle of December 2006 (at the time of Herman Birnbaum's deposition, which took place on December 18, following Mr. Birnbaum's production of documents to Lead Plaintiff on December 13). Lead Plaintiff ignored the issue during Mr. Birnbaum's deposition and for nearly three weeks thereafter. It did not express any concern about the completeness of Defendants' document production until it sent a letter to Defendants on January 5, 2007, *more than nine months after Lead Plaintiff served its first request for documents. Id.* ¶ 7. Moreover, Lead Plaintiff did not ask whether Defendants had produced documents from backup tapes until January 30, 2007. *Id.* Ex. A. In a letter dated February 2, 2007, Defendants told Lead Plaintiff that it was not restoring and searching backup tapes because it was unduly burdensome and impractical, particularly given Lead Plaintiff's undue delay in raising the issue. *Id.* ¶ 9, Ex. B. Notwithstanding Lead Plaintiff's clear difference of view, it did not file a motion and did not meet and confer. Instead, providing a strong indication that it was not an important issue for them, Lead Plaintiff issued deposition notices on January 31, 2007 for three Defendants in this action, the CEO, CFO, and Corporate Controller of Veeco (the Individual Defendants) – for February 23, February 28, and February 15, respectively. *Id.* ¶ 8. These depositions have since occurred.

Lead Plaintiff's dilatory conduct is extremely prejudicial to the parties and this Court's ability to manage discovery. Like the motion to add options-backdating to the derivative complaint (which was denied), this issue could have been raised months ago. The discovery deadline is scheduled for May 11, 2007, and the Court has indicated that it will not be extended.

If the Court ordered Defendants to restore and search their backup tapes pursuant to Lead

Plaintiff's request, Defendants would be required to perform a potentially massive document

review process in a short period of time during which Defendants already expect to be fully

occupied with expert discovery and the Derivative Plaintiffs' depositions.

### B.    Defendants Have Conducted Extensive Discovery

Defendants' search for documents in response to Lead Plaintiff's First Request for

Production of Documents was more than reasonable.  The steps taken by Defendants to collect

and review electronic documents in response to Lead Plaintiff's document requests included the

following:

- Defendants put a litigation hold in place to ensure that electronic documents on computer hard drives, Veeco servers, and backup tapes were not destroyed or transferred to a less accessible format (*see* Declaration of Linda Chan ("Chan Decl.") ¶ 4);

- Defendants identified dozens of current and former employees that it judged to be likely sources of responsive documents (including, of course, all of the Individual Defendants) (Wallin Decl. ¶ 11);

- Defendants, through outside litigation counsel Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), hired an outside consulting firm, Merrill Corporation ("Merrill"), that specializes in the collection of electronic data to assist in the collection of electronic files (*see id.* ¶ 12);

- At the direction of Gibson Dunn, Veeco IT personnel and Merrill collected electronic files maintained by those persons judged to be likely sources of responsive documents from computer hard drives and various Veeco servers.  The collection included a broad variety of electronic file types, including but not limited to emails, deleted emails, Word documents, Excel files, and PowerPoint presentations.  Employees were not provided with any discretion concerning which electronic files to provide.  Put another way, all available electronic files were collected, containing millions of pages of data documents (*see id.* ¶ 13);

- Defendants filtered the millions of pages of documents collected as a result of this process through a list of over thirty broad search terms.  After electronically reviewing millions of pages to generate a subset of documents containing any of the search terms, Defendants then manually reviewed in excess of a half million pages of electronic files (*see id.* ¶¶ 13-14).

Defendants ultimately reviewed more than 600,000 pages (520,000 pages of which were from electronic media), and produced approximately 181,000 pages of responsive documents to Lead Plaintiff and the Derivative Plaintiffs. *Id.* ¶¶ 14-15. Of the total number of electronic produced documents, approximately 43% were from the files of, or otherwise concerned, Messrs. Braun, Rein, Kiernan, Reifert, Glassman, and Karp and Ms. Scally.[1] *Id.* ¶ 15. The total cost incurred just to collect and filter the electronic documents was approximately $50,000. *Id.* ¶ 17. The costs of reviewing the documents for privilege and responsiveness were many hundreds of thousands of dollars more. *Id.*

Defendants have already produced tens of thousands of pages of documents from reasonably accessible electronic and hard copy sources relating to the seven individuals in question. Specifically, Defendants have produced approximately 6,100 pages concerning Mr. Braun; 20,300 relating to Mr. Rein; 49,300 relating to Mr. Kiernan; 25,400 relating to Mr. Reifert; 15,100 relating to Mr. Karp; 10,800 relating to Mr. Glassman; and 8,800 relating to Ms. Scally.[2] *Id.* ¶ 16. Moreover, Defendants have produced hundreds of documents, many from the files of these seven individuals, relating to key issues in the case such as the accounting errors alleged in the Complaint, and Veeco's assessment of controls relating to its TurboDisc division. These documents include: (1) detailed workpapers compiled by Veeco's Manager of Internal

---

[1] Contrary to Lead Plaintiff's baseless assertion that it received "virtually no email communications of any sort sent to Messrs. Rein or Braun, nor any other form of communication to or from these persons" (Pl.'s Br. at 1), Defendants have produced approximately 8,800 pages of communications to and from Mr. Rein, and 3,100 pages of communications to and from Mr. Braun. Wallin Decl. ¶ 16.

[2] Some of the documents included in these counts relate to more than one person. Even after accounting for this overlap, Defendants still produced approximately 73,000 pages of responsive documents that related to one or more of the seven individuals in question. Wallin Decl. ¶ 16.

Audit, Mr. Reifert, who was primarily responsible for the discovery and quantification of the inventory accounting errors corrected in Veeco's restatement; (2) other workpapers supporting the adjustments reflected in the restatement; (3) emails between Mr. Reifert and the TurboDisc divisional controller concerning TurboDisc's controls; (4) detailed communications between Veeco management and Veeco's Audit Committee concerning the status of Sarbanes-Oxley testing at TurboDisc, as well as Veeco's other business units; (5) communications between Veeco's Corporate Controller, Mr. Kiernan, and the TurboDisc divisional controller concerning staffing requirements; and (6) various emails and other documents (some which were sent to or received by Mr. Rein), concerning TurboDisc inventory levels. *Id.* ¶ 18.

Throughout the relevant time period, Veeco backed up its systems on a monthly basis. Chan Decl. ¶ 5. Although Veeco took appropriate steps to preserve its backup tapes, Veeco did not restore and search its backup tapes. Wallin Decl. ¶ 19. Indeed, restoration of backup tapes was deemed unreasonable for a variety of reasons. *Id.* ¶ 20. First, restoration of backup tapes is extremely burdensome, costly, and time-consuming. Second, in light of the litigation hold that Veeco implemented, there was strong reason to believe that a significant volume of highly relevant documents were available from readily accessible sources such as individual computers and files archived on various Veeco servers. *Id.*

Further examination of Veeco's backup tapes in connection with this dispute confirms that a decision not to restore backup tapes was reasonable. Veeco's backup tapes have compressed data on them, and, as a general matter, have to be accessed sequentially, meaning that the data is not organized for retrieval of individual documents or files. Chan Decl. ¶ 9. Lead Plaintiff has requested documents relating to the twenty-one month period from July 1, 2003 through April, 1, 2005. During that time period, Veeco backed up its systems onto

approximately forty-five backup tapes. *Id.* ¶ 7. Thus, if the Court were to require production of responsive data, even from just seven persons, Defendants would have to restore and search these forty-five backup tapes that contain approximately twelve terabytes of data. *Id.* The format of Veeco's backup tapes dictates that substantial portions of the tapes must be restored if they are to be accessible at all. *Id.* ¶¶ 9-10. Thus, Defendants would then have to load data from approximately forty-five backup tapes onto servers, cull through the data to identify documents concerning the seven individuals identified by Lead Plaintiff, and then filter that data through a list of search terms. Wallin Decl. ¶ 21. Defendants estimate that the total cost just to restore and filter documents in response to Lead Plaintiff's request would be approximately $124,000. *Id.*

## ARGUMENT

### I. DEFENDANTS PRODUCED A SIGNIFICANT AMOUNT OF DOCUMENTS DURING DISCOVERY AND ACTED IN GOOD FAITH AT ALL TIMES

As described in detail above, Defendants made an extensive search for and production of documents from reasonably accessible sources in response to Lead Plaintiff's document request. Lead Plaintiff's assertion that, notwithstanding this extensive document production, Defendants' conduct was "highly disingenuous," "highly misleading," and in violation of the Federal Rules of Civil Procedure (*see* Pl.'s Br. at 2-3) completely miss the mark. Federal Rule 26 was amended effective December 1, 2006 to include additional provisions concerning electronic discovery. As Lead Plaintiff well knows, document discovery in this action was substantially complete in this action more than three months prior to the effective date of the amended Rule. Wallin Decl. ¶ 5. Amended Federal Rule 26 imposes new obligations on both sides with respect to electronic discovery – a fact that Lead Plaintiff conspicuously fails to mention in its brief. The reality, of course, is that both sides conducted discovery prior to December 1, 2006 pursuant to the rules

that were in effect at the time. Defendants welcome the Court's direction that the issues in this

motion be decided pursuant to the guidance set forth in amended Federal Rule 26. As explained

in more detail below, amended Federal Rule 26 and the related Advisory Committee Notes make

clear that restoration of backup tapes is not required here.

If any party has been dilatory, it is Lead Plaintiff. It was apparent to anyone with

experience in federal discovery that Defendants were not searching their backup tapes. In light

of the objections Defendants served on May 9, 2006, there could be no surprise when Defendants

confirmed on February 2, 2007 that Veeco did not restore and search backup tapes. *Id.* ¶ 4. It is

common knowledge that the burden and costs of restoring and searching backup tapes are

typically significant, and thus Lead Plaintiff should have – and did in our view – recognize as

early as May 9, 2006 that Defendants were not restoring and searching them. *See, e.g., Zubulake

v. UBS Warburg LLC*, 217 F.R.D. 309, 314 (S.D.N.Y. 2003) (hereinafter "Zubulake I") ("Backup

tapes must be restored . . . . That makes such data inaccessible."); *Rowe Entm't, Inc. v. William

Morris Agency*, 205 F.R.D. 421, 429-30 (S.D.N.Y. 2002); *Hagemeyer North Am., Inc. v.

Gateway Data Scis. Corp.,* 222 F.R.D. 594, 600-01 (E.D. Wis. 2004) (recognizing the "unique

burden" of restoring and searching backup tapes); *Medtronic Sofamor Danek, Inc. v. Michelson,*

229 F.R.D. 550, 553 (W.D. Tenn. 2003); *Cognex Corp. v. Electro Scientific Indus., Inc.,* 2002

WL 32309413, at *3 (D. Mass. July 2, 2002); *Byers v. Illinois State Police*, 2002 WL 1264004,

at *11 (N.D. Ill. June 3, 2002); *McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001).

Neither the recently amended Federal Rule 26(b)(2), nor the preceding case law

concerning electronic discovery, establishes a presumption in favor of the production of

information from backup tapes. As the Advisory Committee on Rule 26 recently stated, "[t]he

volume of – and the ability to search – much electronically stored information means that in

10

many cases the responding party will be able to produce information from reasonably accessible sources that will fully satisfy the parties' discovery needs." Fed. R. Civ. P. 26 advisory committee notes (2006) (emphasis added). "There is certainly no controlling authority for the proposition that restoring all backup tapes is necessary in every case." *McPeek*, 202 F.R.D. at 33 (D.D.C. 2001); *see Cognex Corp.*, 2002 WL 32309413, at *5 ("[t]he failure to search backup tapes itself cannot have been bad faith – the case law does not establish a general duty to search backup tapes."

Lead Plaintiff's failure to raise the issue with Defendants until January 30, 2007 – more than five months after the substantial completion of document discovery[3] – strongly suggests that it made a tactical decision early on in the case not to pursue the restoration of backup tapes. More likely, Lead Plaintiff's sudden interest in restoring backup tapes is a transparent attempt to increase the cost to Defendants of defending a case that has serious problems, as evidenced by the disavowal by Lead Plaintiff's key confidential witness (Mr. Huff) of virtually all of the specific allegations of wrongdoing in the Amended Complaint.[4]

---

[3] Even if the Court were to credit Lead Plaintiff's carefully phrased assertion that it was not *informed* by Defendants until February 2, 2007, that Defendants did not restore and search their backup tapes, this is not an indication of bad faith. *See Cognex Corp.*, 2002 WL 32309413, at *5 ("our system of discovery does not provide an automatic mechanism for determining precisely how a search was conducted").

[4] Tellingly, Lead Plaintiff has expressed no interest in restoring backup data concerning this confidential witness.

**II.     VEECO'S BACKUP TAPES ARE NOT REASONABLY ACCESSIBLE
AND LEAD PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR
<u>ORDERING DEFENDANTS TO RESTORE AND SEARCH THEM</u>**

Federal Rule 26(b)(2)(B) states that a party "need not provide discovery of electronically stored information that the party identifies as not reasonably accessible because of undue burden or cost." As described in more detail below, the burden and cost to Veeco of restoring backup tapes is significant. Thus, Lead Plaintiff can obtain this information only if it shows good cause – a showing that Lead Plaintiff cannot make here. The potential benefits – if any – of restoring dozens of backup tapes pale in comparison to the burden and cost to Veeco. Consequently, Lead Plaintiff's motion must be denied.

**A.     Restoring and Searching Veeco's Backup Tapes Would Require
<u>Undue Burden and Cost</u>**

Restoring backup tapes in this case would be unduly burdensome and costly. "[W]hether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format (a distinction that corresponds closely to the expense of production.)" *Zubulake I*, 217 F.R.D. at 318. "Whether electronic data is accessible or inaccessible turns largely on the media on which it is stored." *Id.* Veeco's backup tapes – at least forty-five of which are at issue here – are not designed for the retrieval of specific files and are relatively inaccessible. Chan Decl. ¶¶ 9-10. They must be accessed sequentially, which as a practical matter means that Veeco has to restore information at the beginning of the tape in order to access data at the middle or the end of a tape. *Id.* Moreover, the data on the tapes is compressed, which increases the time and cost associated with restoration. *Id.*

Courts in this district and elsewhere have recognized that backup tapes that contain compressed data and must be accessed sequentially are among the most inaccessible forms of electronic media, and that restoration of information from tapes of this sort often is unduly

burdensome and costly.  *See Zubulake I*, 217 F.R.D. at 319; *see also Hagemeyer North Am., Inc.*,

222 F.R.D. at 600-01 (recognizing the unique burden of restoring and searching backup tapes);

*Cognex Corp.*, 2002 WL 32309413, at *3 (same); *Rowe Entm't, Inc.*, 205 F.R.D. at 429-30

(same); *McPeek*, 202 F.R.D. at 34 (same).

Given the format of Veeco's backup tapes, and amount of information sought by Lead

Plaintiff, compliance clearly would be costly and difficult.  Indeed, Defendants estimate that

restoring Veeco's backup tapes and organizing the information restored from the tapes for review

would cost approximately $124,000.  Wallin Decl. ¶ 21.

Consequently, the Court may order discovery from Veeco's backup tapes only if Lead

Plaintiff shows good cause, considering the limitations of Federal Rule 26(b)(2)(C).

**B.    <u>Lead Plaintiff Cannot Establish Good Cause</u>**

Lead Plaintiff falls woefully short in establishing "good cause," which is the prerequisite

to obtaining discovery of Defendants' backup tapes.[5]  The decision of whether to require a

responding party to search for and produce information that is not reasonably accessible depends

not only on the burdens and costs of doing so, but also on whether those burdens and costs can

be justified in the circumstances of the case – whether there is "good cause."  Fed. R. Civ. P. 26

advisory committee's notes (2006).  Appropriate considerations include:  (1) the specificity of the

discovery request; (2) the quantity of information available from other and more easily accessed

sources; (3) the failure to produce relevant information that seems likely to have existed but is no

longer available on more easily accessed sources; (4) the likelihood of finding relevant,

---

[5]  The Court may order discovery from information that is not reasonably accessible only "if
the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)."
Fed. R. Civ. P. 26(b)(2)(B).

responsive information that cannot be obtained from other, more easily accessed sources;

(5) predictions as to the importance and usefulness of the further information; (6) the importance

of the issues at stake in the litigation; and (7) the parties' resources. *Id.*; *see* Fed. R. Civ. P.

26(b)(2)(C); *see also Zubulake I*, 217 F.R.D. at 322.[6] Here, all of the relevant factors identified

in the advisory committee's notes to the amended rules (none of which Lead Plaintiff discusses at

any length, and several of which are completely ignored) tip the balance strongly in favor of

Defendants.

### 1.    The specificity of the discovery request

Lead Plaintiff's document requests are extremely broad.  Lead Plaintiff has made fifty-

nine separate document requests, not including subparts, for documents concerning seven

individuals.  Documents responsive to this request may reside on at least forty-five separate

backup tapes.[7]  Chan Decl. ¶ 7.  Given the breadth of Lead Plaintiff's requests, it is very difficult

---

[6]  The Advisory Committee Notes indicate that courts should consider the seven factors listed above in interpreting amended Federal Rule 26(b)(2)(C). Federal Rule 26(b)(2)(C) states in relevant part: "Discovery shall be limited by the Court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

[7]  Moreover, the document requests include such blunderbuss requests as Request No. 14 ("All documents concerning any compilations or calculations, on a historical basis, of Veeco's sales, revenues, pretax income, net income, profit margins, average sales prices, average transaction prices, operating results, expenses, costs of sales and/or expenses, number of units sold, number of units ordered, backlog of inventory, defective or unsaleable inventory, warranty claims, and including, but not limited to (a) any documents comparing Veeco to industry competitors on any or all of these measures, and (b) any comparisons of actual

[Footnote continued on next page]

to identify documents responsive to their requests without reviewing an extremely large number of documents. For example, during the document discovery period those requests required the review of approximately 520,000 pages of electronic documents pulled from Defendants' servers and computers. Wallin Decl. ¶ 14. Of those pages, more than 131,000 were responsive to Lead Plaintiff's requests. *Id.* ¶ 15. The number of electronic pages reviewed concerning Messrs. Braun, Rein, Kiernan, Reifert, Glassman, and Karp and Ms. Scally totaled in the hundreds of thousands, of which approximately 56,000 were responsive. *Id.* Given that each backup tape could be expected to have similar – and likely identical – yields, requiring the search of forty-five backup tapes for documents concerning these seven individuals could require the restoration and potential review of approximately one million pages of electronic documents, or approximately two times the amount already reviewed pursuant to every document request that has already occurred in this case.

Lead Plaintiff's document request also is prejudicial. Lead Plaintiff waited nine months after discovery started and more than four months after the close of document discovery to express any interest in Defendants' document discovery methods, and waited ten months to inquire whether Defendants were searching backup tapes, which was only one month prior to the then-scheduled fact-discovery deadline of February 28, 2007. If the Court ordered Defendants to restore and search their backup tapes pursuant to Lead Plaintiff's request, Defendants would be required to undertake a potentially massive document review in a short period of time during which Defendants already expect to be fully occupied with expert discovery and the Derivative

---

[Footnote continued from previous page]
 results to plans, forecasts, or projections during the relevant time period; and (c) any documents explaining any variances in comparison of actual results to plans, forecasts or projections.")

Plaintiffs' depositions. Lead Plaintiff could have raised this issue months ago; there is no excuse for its prejudicial delay.

### 2. The quantity of information available from other and more easily accessed sources

"There is certainly no controlling authority for the proposition that restoring all backup tapes is necessary in every case," and consequently "economic considerations have to be pertinent if the court is to remain faithful to its responsibility to prevent 'undue burden or expense.'" *McPeek*, 202 F.R.D. at 33, 34 (citing Fed. R. Civ. P. 26(c)). "[O]rdering the producing party to restore backup tapes upon a showing of likelihood that they will contain relevant information in every case [would] give[] . . . plaintiff[s] a gigantic club with which to beat [their] opponent[s] into settlement." *Id.*

As previously described, Defendants made an extensive search for and production of documents from more readily accessible sources than backup tapes. As a result of this search, Defendants ultimately reviewed more than 600,000 pages of documents as a result of this process, and produced approximately 181,000 pages to Lead Plaintiff and the Derivative Plaintiffs. Wallin Decl. ¶¶ 14-15.

### 3. The failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources, the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources, and predictions as to the importance and usefulness of the further information

In seeking to compel discovery, a party must "demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld." *Bethea v. Comcast*, 218 F.R.D. 328, 330 (D.D.C. 2003) (internal quotation omitted). "[A] party's suspicion that another party has failed to respond to document requests fully and completely does not justify compelled

16

inspection of its computer systems." *Id.* Moreover, even where there is no question that a search
of backup tapes would uncover documents not already produced, such a search often is
unwarranted. *See, e.g., Cognex Corp.*, 2002 WL 32309413, at *5-6 (denying plaintiff's motion
to compel the search of defendant's backup tapes where defendant already conducted an
extensive search for relevant documents). Put another way, "[a]t some point, the adversary
system needs to say 'enough is enough' and recognize that the costs of seeking every relevant
piece of discovery is not reasonable." *Id.* at *5 (emphasis in original).

Lead Plaintiff has made no showing that Veeco's backup tapes are likely to have a
significant volume of important or useful information that is not available from more easily
accessed sources. The only support that Lead Plaintiff offers for its position is the fact that a
single non-party witness named Herman Birnbaum produced two supposedly "highly
incriminating" emails that he sent to Mr. Rein that were not included in Defendants' document
production. *See* Pls. Br. at 1. Putting aside Lead Plaintiff's characterization of the importance of
these emails (which is a gross exaggeration),[8] they do not support the argument that Defendants'
backup tapes contain a significant amount of highly relevant information not available from
more accessible sources.

That a few marginal documents were not found does not justify a wholesale search of
backup tapes. The mere fact that Defendants' search did not capture every relevant document is
not an indication that their document production was inadequate or that a search of backup tapes

---

[8] Apparently these emails were so "highly relevant" that Lead Plaintiff declined to ask a single
question about one of them during Mr. Rein's deposition. Moreover, a quick review of the
transcript of Mr. Birnbaum's and Mr. Rein's depositions illustrates the tangential relevance –
at best – of the other email.

is warranted. *See Cognex Corp.,* 2002 WL 323094131, at *5 (the costs of seeking every relevant piece of discovery is not reasonable).

### 4.    The importance of the issues at stake in the litigation

Securities fraud claims are hardly unique. Although the issues are important to the parties, they are not particularly novel and thus this factor does not weigh in favor of either party. *See Zubulake v. UBS Warburg LLC,* 216 F.R.D. 280, 289 (S.D.N.Y. 2003) (hereinafter "Zubulake III") (in a cost-shifting case about discrimination in the workplace – a "weighty issue" – the court did not find it "sufficiently important" to weigh in its analysis).

### 5.    The parties' resources

Steelworkers Pension Trust has approximately $1.5 billion in assets. *See http://www.steelworkerspension.com.* Veeco is a public company with hundreds of millions of dollars in assets. "A requesting party's willingness to share or bear the access costs may be weighed by the [C]ourt in determining whether there is good cause." Fed. R. Civ. P. 26 advisory committee notes (2006). Here, Lead Plaintiff is unwilling to share or bear the costs, going so far as to argue in its brief that Defendants should be responsible for all the costs. *See* Pl.'s Br. at 3-5. That a party with $1.5 billion in assets is vehemently opposed to bearing any of the costs of discovering information that it is requesting from inaccessible sources is a true indication of what little benefit Lead Plaintiff believes would result from granting its motion to compel.

In sum, because Lead Plaintiff has failed to establish any of these factors in its favor, Lead Plaintiff has failed to establish good cause, and this Court should not order any further discovery. Even if Lead Plaintiff were correct that some restoration of backup tapes was warranted here (which it is not), Lead Plaintiff's request that the Court order a wholesale restoration and search of dozens of backup tapes, at a cost of hundreds of thousands of dollars, is

absurd. Lead Plaintiff offers no evidence that such a search would yield a significant volume of important documents. Even if Lead Plaintiff had made such a showing, it would support, at most, the restoration of a sample of information from the backup tapes in order to better assess the burden and cost of restoration and the value to the requesting party. Fed. R. Civ. P. 26 advisory committee notes (2006); *see Zubulake I*, 217 F.R.D. at 324.

## III.  IF THE COURT WERE TO ORDER FURTHER DISCOVERY, THE COSTS SHOULD BE SHIFTED TO LEAD PLAINTIFF

Even if the Court were to require the restoration and search of Defendants' backup tapes, it should require Lead Plaintiff to pay for the cost of restoring and searching them. "The good-cause inquiry and consideration of the Rule 26(b)(2)(C) limitations are coupled with the authority to set conditions for discovery." Fed. R. Civ. P. 26 advisory committee notes (2006). Such "conditions may take the form of limits on the amount, type, or sources of information required to be accessed and produced." *Id.* They "may also include payment by the requesting party of part or all of the reasonable costs of obtaining information from sources that are not reasonably accessible." *Id.*

The factors considered in this District for assessing the appropriateness of cost-shifting are closely related to the factors that the Court must consider in assessing whether Lead Plaintiff has made its required showing of good cause. *See Zubulake I,* 217 F.R.D. at 322-24. They include: (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost of production, compared to the amount in controversy; (4) the total cost of production, compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information. *Zubulake I*, 217 F.R.D. at 322. In

19

addition, the factors are to weighed in descending order of importance. *Id.* at 323. The first two factors, comprising the "marginal utility test," are the most important. *Id.* The second group of factors, (3), (4), and (5), addresses cost figures. *Id.* The third group, (6), addresses the importance of the litigation and rarely comes into play. *Id.* The last factor, (7), is the least important because it is fair to presume that the response to a discovery request generally benefits the requesting party.[9] *Id.*

     As with the good cause analysis, these factors tip strongly in favor of not imposing any of the burden and cost of restoration on Defendants. All of the factors listed above (including the first and second factors, which are the most important), support cost-shifting. Lead Plaintiff's document request is extremely broad, and thus the first factor favors Defendants. Defendants conducted an extensive search for an production of documents from more readily accessible sources than back tapes, resulting in the review of more than a half million pages of electronic files. Wallin Decl. ¶ 14. Thus, the second factor favors Defendants as well. Steelworkers Pension Trust has approximately $1.5 billion in assets, about twice the assets of Veeco, and thus the third factor favors Defendants. Further, as this Court has noted, the amount in controversy is relatively modest for a securities law class action. *See* Decision and Order Selecting Lead Plaintiff and Lead Counsel, dated October 12, 2005 (in rejecting the need for liaison counsel in this case, noting that "the recovery (if any) is unlikely to set any records in this District") (McMahon, J.). Thus, the fourth factor favors Defendants.

---

[9] When evaluating cost-shifting, the central question must be whether the request imposes an "undue burden or expense" on the responding party, or "how important the sought-after evidence is in comparison to the cost of production." *Zubulake I*, 217 F.R.D. at 322-23. The seven-factor test described above provides guidance, but should not be mechanically applied at the risk of losing sight of its purpose. *Id.* at 323.

Veeco's only control over costs (the fifth factor listed above) is its ability to select a vendor to restore, upload, and search the back-up tapes. Lead Plaintiff, on the other hand, has a much greater ability to control costs through its choice of discovery requests, which, as discussed previously, is extraordinarily broad. Further, given Lead Plaintiff's apparent unwillingness to bear or share in the costs, it has no incentive whatsoever to limit such costs. Indeed, the greater the costs and burdens imposed on Defendants, the more advantage Lead Plaintiff derives. Lead Plaintiff has greater control over the costs of restoring and searching the backup tapes, but has little incentive to exercise that control in a way to minimize those costs.

The issues at stake in the litigation are not novel. Thus, the sixth factor favors Defendants, or at best is neutral. Lastly, Defendants are unlikely to benefit from the restoration from information from Veeco's backup tapes. Although it is probable that restoration would not benefit either party to any significant degree, if any side does benefit, it is likely to be Lead Plaintiff, not Defendants. *See Zubulake III,* 216 F.R.D. at 289.

All the factors listed above, including the two most important factors, counsel against imposing any of the costs of restoration of Defendants. Thus, the central question in evaluating cost-shifting – that is, whether Lead Plaintiff's request imposes an "undue burden or expense" on the responding party – must be answered in the affirmative. *Zubulake I*, 217 F.R.D. at 322-23. Lead Plaintiff has failed to establish the importance of the sought-after evidence in comparison to the cost of production. *See Id.*

## CONCLUSION

For all these reasons, Defendants Veeco Instruments Inc., Edward H. Braun, John F.

Rein, Jr., and John P. Kiernan respectfully request that this Court deny Lead Plaintiff's Motion to

Compel Defendants to Produce Electronic Discovery.

Dated:  New York, New York
        March 5, 2007

                                GIBSON, DUNN & CRUTCHER LLP

                                By:  _____
                                     John A. Herfort (JH-1460)
                                     Robert F. Serio (RS-2479)
                                     J. Ross Wallin (JW-3911)

                                200 Park Avenue
                                New York, New York 10166-0193
                                Phone: (212) 351-4000
                                Fax: (212) 351-4035

                                *Attorneys for Defendants Veeco*
                                *Instruments Inc., Edward H. Braun,*
                                *John F. Rein, Jr. and John P. Kiernan*