UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                 :
IN RE VEECO INSTRUMENTS INC.       :     05 MD 1695 (CM)(GAY)
SECURITIES LITIGATION           :
                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                 :
THIS DOCUMENT RELATES TO:      :
ALL ACTIONS              :
                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S MARCH 9TH ORDER


### (FILED UNDER SEAL PURSUANT TO CONFIDENTIALITY ORDER DATED MAY 16, 2006)


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

*Attorneys for Defendants Veeco*
*Instruments Inc., Edward H. Braun,*
*John F. Rein, Jr., John P. Kiernan*

April 2, 2007

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 5

    I.      Lead Plaintiff's Motion Provides No Basis For Reconsideration.......................... 5

    II.     Lead Plaintiff Mischaracterizes the Scope of Jefferson Wells' Work................... 7

    III.    Lead Plaintiff's Attempt to Undermine the Credibility of the Affidavits of Rein
              and Greiss Blatantly Misrepresents the Facts ....................................................... 8

             1. *Preliminary Discovery of Errors at TurboDisc* .................................... 8

             2. *Initiation of Veeco's Internal Investigation* ........................................ 10

             3. *Purpose of the Kaye Scholer/Jefferson Wells Investigation* .............. 12

    IV.    Lead Plaintiff's New *Adlman* Arguments are Legally and Factually Deficient .. 14

    V.     Lead Plaintiff Fails to Demonstrate Substantial Need ......................................... 19

    VI.    Lead Plaintiff's Conduct is Sanctionable Under 28 U.S.C. § 1927 .................... 22

CONCLUSION....................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Case

*Acevedo v. Immigration and Naturalization Serv.*, 538 F.2d 918 (2d Cir. 1976) ......................... 21

*Burgos v. Murphy*, 692 F. Supp. 1571 (S.D.N.Y. 1988) ................................................. 22

*Ass'n of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstaldt AG*, 2005 WL 3099592 (S.D.N.Y. Nov. 17, 2005) ............................ 6

*Estrella v. P.R. Painting Corp.*, 2007 WL 174137 (E.D.N.Y. Jan. 19, 2007) .............................. 13

*In re Auction Houses*, 2004 WL 2624896 (S.D.N.Y. Nov. 18, 2004) .......................................... 22

*In re Grand Jury Subpoena*, 350 F.3d 1010 (9th Cir. 2003) ....................................................... 16

*In re Ski Train Fire in Kaprun, Austria, on November 11, 2000*, 224 F.R.D. 543 (S.D.N.Y. 2004) ............................................................................................................................. 5

*In re Veeco Instruments Sec. Litig.*, 2007 WL 724555 (S.D.N.Y. Mar. 9, 2007) .................. *passim*

*Jones v. Commerce Bank*, 2007 WL 672091 (S.D.N.Y. Mar. 6, 2007) ........................................... 5

*Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 2006 WL 617977 (S.D.N.Y. Mar. 10, 2006) .......................................................................................................................... 6

*Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97 (2d Cir. 2001) ........................................... 13

*Nelson Seating Pty. Ltd. v. Selle Royal S.P.A.*, 2005 WL 3358598 (S.D.N.Y. Dec. 7, 2005) ........ 5

*United States Fidelity & Guar. v. Braspetro Oil Serv's Co.*, 2001 WL 79899 (S.D.N.Y. Jan. 30, 2001) ....................................................................................................................... 4, 5

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) .............................................. 3, 13, 14, 15

*United States v. Tenzer*, 213 F.3d 34 (2d Cir. 2000) ................................................................... 6

## Statutes

28 U.S.C. § 1927 ................................................................................................................... 4, 21

Fed. R. Civ. P. 26(b)(3) ............................................................................................................. 14

Local Civ. R. 6.3 .......................................................................................................................... 4

## Other Authorities

8 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2024 ............... 15

Thomas W. Golden et al., A GUIDE TO FORENSIC ACCOUNTING INVESTIGATIONS 255-56 (2006) ................................................................................................................................. 10

Defendants Veeco Instruments Inc., Edward H. Braun, John F. Rein, Jr. and John P.

Kiernan respectfully submit this memorandum of law in opposition to Lead Plaintiff's motion for

partial reconsideration of this Court's Order dated March 9, 2007.  *See In re Veeco Instruments*

*Sec. Litig.*, 2007 WL 724555 (S.D.N.Y. Mar. 9, 2007) (the "March 9 Order").[1]

## PRELIMINARY STATEMENT

Lead Plaintiff seems to be specializing in repetitive motions.  Magistrate Yanthis

correctly concluded in his January 24, 2007 Order, based on detailed sworn statements from

Veeco's Chief Financial Officer, John F. Rein, Jr., and Veeco's outside counsel, Kaye Scholer

partner Rory Greiss, that the Kaye Scholer/Jefferson Wells materials were protected under the

work product doctrine.  This Court agreed and, in a careful and lengthy opinion, denied Lead

Plaintiff's motion to reverse.  Lead Plaintiff offers no credible reason for the Court to reconsider

any of the findings in its March 9 Order, which included the following:

- The Second Circuit's decision in *Adlman* protects documents prepared for a dual purpose *(i.e. a business purpose as well as a litigation purpose)* and turns on whether the material would have been prepared irrespective of the expected litigation.  March 9 Order at *4;

- Magistrate Yanthis correctly applied the standard for work product protection set forth in *Adlman*.  The "fact that some or even all of the documents at issue were created in part to ensure that Veeco's public disclosures were accurate does not remove them from the ambit of work product protection under *Adlman*." *Id.* at *8.  "In fact, Mr. Rein plainly states in his affidavit that Veeco would have relied exclusively on its internal finance staff and outside auditors had it been concerned solely with correcting the TurboDisc financial records rather than with the prospect of litigation." *Id.*

---

[1] Lead Plaintiff has finally conceded (Pl.'s Br. at 1) that memoranda generated by Kaye Scholer LLP ("Kaye Scholer") and interview notes and memoranda generated by Jefferson Wells International, Inc. ("Jefferson Wells") are privileged.  Lead Plaintiff does not move for reconsideration of the Court's March 9 Order with respect to these documents.

- Magistrate Yanthis based his finding that the Kaye Scholer/Jefferson Wells materials were protected on competent evidence – specifically, the detailed sworn statements of Veeco's CFO, John F. Rein, Jr. and Kaye Scholer partner Rory Greiss. *Id.* at *6-9;

- Lead Plaintiff's attempts to impugn the sworn statements of Mr. Rein and Mr. Greiss were "wholly without merit." *Id.* at *7-9; and

- Lead Plaintiff had not demonstrated a "substantial need" for the Kaye Scholer/Jefferson Wells materials and had access to substantially equivalent information. *Id.* at *9-12.

Lead Plaintiff's third crack at the issues is a waste of time and resources for the parties and Court. Equally egregious is Lead Plaintiff's willingness to distort the factual and procedural record in support of its efforts.

First, Lead Plaintiff's suggestion that its motion is predicated on "new evidence" is demonstrably false. Pl.'s Br. at 2. The "new evidence" on which Lead Plaintiff relies consists of documents that were produced over six months ago, and the deposition testimony of various witnesses, all of which were taken a week or more *before* the Court issued its March 9 Order. In fact, Lead Plaintiff cited many of the deposition transcripts it now characterizes as "new evidence" in its March 1, 2007 Reply to this Court. Declaration of Jeffrey Osterwise, dated March 1, 2007 ("March 1, 2007 Osterwise Decl.), Ex. A, Ex. B. There is nothing resembling the type of "newly discovered" evidence that would support reconsideration.

Second, in yet another attempt to impugn the sworn statements of Mr. Rein and Mr. Greiss, Lead Plaintiff mischaracterizes the "new evidence" on which it purports to rely (see Pl.'s Br. at 2-8), and simply ignores the prior decisions of this Court. For example, Lead Plaintiff continues—incorrectly—to assert that Mr. Rein mischaracterized the purpose of the Kaye Scholer/Jefferson Wells investigation, which Lead Plaintiff asserts was conducted in order to obtain the opinion of Veeco's outside auditor, Ernst & Young. *Id.* at 6. This Court rejected this

2

argument in its Order, finding that "the fact that some or even all of the documents at issue were created in part to ensure that Veeco's public disclosures were accurate does not remove them from the ambit of work product protection under *Adlman*." March 9 Order at *8. Lead Plaintiff's position, this Court held, was predicated "to a greater or lesser extent on plaintiff's misinterpretation" of Second Circuit law. March 9 Order at *8-9. This Court, affirming Magistrate Yanthis, also held that Lead Plaintiff's attempts to impugn the sworn statements were "entirely without merit." *Id.* at *7.

Third, Lead Plaintiff refuses to accept or follow the legal standard for attorney work product in the Second Circuit. As this Court recognized, (*see id.* at *4-5) the standard set forth in the Second Circuit's decision in *United States v. Adlman* is simple: work product protection "turns on" whether the document "would have been prepared irrespective of the expected litigation," and if it would have been, *a fortiori*, there is protection. 134 F.3d 1194, 1204 (2d Cir. 1998). On the other hand, there is no protection for documents that "are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation." March 9 Order at *5. Here, of course, the documents now at issue—which do not include memoranda by Kaye Scholer and interview notes and memoranda by Jefferson Wells, which Lead Plaintiff now concedes are protected—would not have been created at all, absent the prospect of litigation. As Mr. Rein stated, Jefferson Wells' work occurred only because of the prospect of litigation. Declaration of J. Ross Wallin ("Wallin Decl."), Ex. A, Affidavit of John F. Rein, dated August 25, 2006 ("Rein Aff.") ¶ 11.

The Court's March 9 Order chided Lead Plaintiff for "refusing to accept" the standard set forth in *Adlman*. March 9 Order at *5. Undeterred, Lead Plaintiff offers a new and implausible interpretation of *Adlman*. Now, Lead Plaintiff asserts that the documents it seeks to compel

were generated as an "account reconstruction" in the course of a fraud audit, and that this

warrants production. Pl.'s Br. at 2. Thus, Lead Plaintiff argues, *id.*, Defendant must show that

the documents would not have been created in substantially similar form *during the course of a*

*fraud audit* but for the prospect of litigation. This argument misses several fundamental points.

First, Veeco is asserting privilege with respect to workpapers and similar documents supporting

the restatement adjustments only where they were prepared in anticipation of litigation. As this

Court recognized, Jefferson Wells was engaged to assist legal counsel in assessing Veeco's

litigation exposure, and would not have been retained but for the prospect of litigation. *Id.* at *8;

Wallin Decl., Ex. A, Rein Aff. ¶ 11. Lead Plaintiff's insistence that the Court must consider

whether the Jefferson Wells documents would have been prepared in substantially similar form

in the course of an *internal investigation into Veeco's litigation position* absent the prospect of

litigation makes no sense, and is based on a false hypothesis. The prospect of litigation was the

*raison d'etre* for the Jefferson Wells documents; they would not have been created in any form,

"ordinary" or otherwise, without it.

Lead Plaintiff offers no support for its novel interpretation of *Adlman* because none

exists. Moreover, Lead Plaintiff's "interpretation" of *Adlman* is an entirely new argument. It

was not presented either to Magistrate Yanthis or this Court, and thus should not be considered

on a motion for a reconsideration.

Finally, Lead Plaintiff has no substantial need for any of the Kaye Scholer/Jefferson

Wells materials. As this Court recognized (*see* March 9 Order, at *11-12), Lead Plaintiff has the

ability to obtain substantially equivalent information. Numerous witnesses (e.g. Messrs. Rein,

Reifert, Kiernan, and Fredericks) have testified at great length concerning the various elements

of Veeco's restatement and Veeco has produced voluminous documents concerning the

restatement. *Id.* at *11-12. Lead Plaintiff's assertion that it has a substantial need for the remaining Kaye Scholer/Jefferson Wells materials because hypothetical future witnesses might have faulty memories and because the Federal Rules limit the number of depositions and interrogatories is frivolous.

In sum, this motion is so vexatious and lacking in merit and appears to "so multiply[ ] the proceedings . . . unreasonably and vexatiously" as to trigger, at the Court's discretion, 28 U.S.C. § 1927.

## ARGUMENT

### I.    Lead Plaintiff's Motion Provides No Basis For Reconsideration

To prevail upon a motion for reconsideration, a party must either meet the standards of Local Civ. R. 6.3 or appeal to the plenary power of the court to modify an interlocutory order. *U.S. Fidelity & Guar. v. Braspetro Oil Serv's Co.*, 2001 WL 79899, at *1 (S.D.N.Y. Jan. 30, 2001). A party making a Rule 6.3 motion "may not advance new facts not previously presented to the Court, and is limited to demonstrating that the Court overlooked controlling decisions or factual matter that were put before it." *Id.* An appeal to the plenary power of the court to modify a previous order is only appropriate when a party can point to "newly discovered evidence, i.e., evidence which was not available to the [party] prior to the time the initial motion was decided." *Id.* at *1.

The standard for granting a motion for reconsideration is "strict." *Nelson Seating Pty. Ltd. v. Selle Royal S.P.A.*, 2005 WL 3358598 (S.D.N.Y. Dec. 7, 2005). A district court's discretion to reconsider a non-final ruling is "subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *In re Ski Train Fire in Kaprun, Austria, on November 11, 2000*, 224 F.R.D. 543, 546 (S.D.N.Y. 2004). "A court will not generally reconsider issues

properly disposed of previously." *Jones v. Commerce Bank*, 2007 WL 672091, at *2 (S.D.N.Y.
Mar. 6, 2007) (internal citation omitted).

Lead Plaintiff's suggestion that its motion for reconsideration is based on "new evidence"
(*see* Pl.'s Br. at 2) is nonsense. The purported new evidence offered by Lead Plaintiff consists of
documents that were produced months ago, and snippets of testimony (virtually all of which is
mischaracterized or taken out of context) from depositions that were taken long before the
Court's March 9 Order. For example, Lead Plaintiff relies heavily on the deposition testimony
of Gary Reifert, John Kiernan and John F. Rein, Jr. These individuals were deposed on February
13, 2007, February 27, 2007 and February 28, 2007, respectively. This supposed "new
evidence" was available to Lead Plaintiff long before the Court's March 9, 2007 Order. Indeed,
Lead Plaintiff filed a reply brief on *March 1, 2007* in which it cited liberally from the transcripts
of various witnesses, including Messrs. Rein and Kiernan. *See* March 1, 2007 Osterwise Decl.
Ex. A, Ex. B (citing February 27, 2007 deposition transcript of John Kiernan and February 28,
2007 deposition transcript of John Rein). On a motion for reconsideration, newly discovered
evidence may be considered only if it "was *not available* . . . prior to the time the initial motion
was decided." *U.S. Fidelity & Guar. Co. v. Braspetro Oil Serv's, Co.*, 2001 WL 79899, at *1
(S.D.N.Y. Jan. 30, 2001) (emphasis added). Lead Plaintiff's motion should be denied on this
basis alone. *See Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 2006 WL 617977, at
*5-6 (S.D.N.Y. Mar. 10, 2006) (finding no basis for reconsideration of denial of motion to

amend when "new evidence" proffered by plaintiff was in fact available to plaintiff before the filing of the proposed amended complaint).[2]

Furthermore, as Lead Plaintiff's own authority makes clear, even in cases where there is "new evidence," the new evidence must be "compelling" in order to warrant reconsideration. *United States. v. Tenzer*, 213 F.3d 34, 40 (2d Cir. 2000); *cf. Ass'n of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstaldt AG*, 2005 WL 3099592, at *1-2 (S.D.N.Y. Nov. 17, 2005) (stating that new evidence presented for reconsideration of final orders must be "highly convincing"). Here, the evidence on which Lead Plaintiff purports to rely is not only old, but, as explained below, is not compelling.

## II.    Lead Plaintiff Mischaracterizes the Scope of Jefferson Wells' Work

In its prior ruling, this Court rejected the argument on Veeco-generated documents, writing that "Lead plaintiff proffers no argument and points to no evidence in the record that would convince this court that Judge Yanthis' ruling is clearly erroneous." March 9 Order at *7. Moreover, Lead Plaintiff's argument misapprehends the nature of the documents at issue. Although Jefferson Wells *did* review documents generated by Veeco in the course of its internal audit, as Mr. Rein clearly states in his deposition, Jefferson Wells' role was to

### REDACTED

. . ." Wallin Decl., Ex. B, Deposition Transcript of John F. Rein, Jr., dated February 28, 2007 ("Rein Tr.") at 233:23-234:3. Its activities were conducted toward that end. That



### REDACTED

---

[2] Lead Plaintiff suggests that reconsideration is appropriate here because the "new evidence" did not exist at the time of Magistrate Yanthis' decision. *See* Pl.'s Br. at 2, n.1. This is irrelevant. Lead Plaintiff is seeking reconsideration of this Court's March 9 Order, not Magistrate Yanthis' decision.

REDACTED                                    *id.* at 235:2-7, does not contradict Mr.

Rein's assertion that Jefferson Wells' role was to assist Kaye Scholer in preparing for anticipated

litigation, and that Jefferson Wells would not have been hired but for the prospect of litigation.

Wallin Decl., Ex. A, Rein Aff. ¶ 11.  Veeco has long admitted the documents' dual use

"candidly."  March 9 Order at *8.  As this Court recognized, "a document created for two

purposes—a business purpose as well as a litigation purpose—is protected under the work

product doctrine."  *Id.* at *5.  Indeed, it would be surprising if the work conducted by Jefferson

Wells was *not* useful to Veeco in preparing its restated financial results.[3]

### III.    Lead Plaintiff's Latest Attempt to Assail the Sworn Statements of Rein and Greiss Misrepresents the Facts

This motion for reconsideration represents Lead Plaintiff's *third* attempt to convince the

Court that Veeco's CFO, Mr. Rein, and its outside counsel, Kaye Scholer partner Rory Greiss,

submitted false sworn statements in this action.  Pl.'s Br. at 3-8.  As both Magistrate Yanthis and

this Court have recognized, these allegations are baseless.  March 9 Order at *8-9.  Lead Plaintiff

again mischaracterizes deposition testimony and distorts the facts to support its position.

#### 1. *Preliminary Discovery of Errors at TurboDisc*

Lead Plaintiff criticizes paragraph 4 of Mr. Rein's affidavit, which states that "during

preliminary testing of internal controls at TurboDisc . . . Veeco identified certain remediation

items."  Pl.'s Br. at 4.  Lead Plaintiff argues that Mr. Rein's statement is somehow contradicted

by Mr. Reifert's deposition testimony that,

REDACTED                                    Declaration of Jeffrey Osterwise,

---

[3]  Although Veeco *did* conduct and complete its own internal audit, Defendants have produced responsive reports and workpapers generated in the course of that audit that were not prepared at the direction of counsel.

dated March 23, 2007 ("Osterwise Decl."), Ex. 1, at 167:12-20.  These two statements are

perfectly consistent.  Both Mr. Rein and Mr. Reifert were talking about the same thing:

**REDACTED**                                  Their statements thus

support, rather than contradict, each other.  In addition, Lead Plaintiff does not—and cannot—

explain how this supposed "inconsistency" has any bearing on whether the Kaye

Scholer/Jefferson Wells materials are protected.

Lead Plaintiff also challenges Mr. Rein's statement in paragraph 4 of his affidavit that he

ordered a balance sheet audit of TurboDisc on September 30, 2004, shortly after remediation

items were identified.  Pl.'s Br. at 4-5.  There is no suggestion that Mr. Rein ordered a balance

sheet audit earlier.  Lead Plaintiff alleges that Veeco knew by July 1, 2004 that TurboDisc's

financial statements were false.  *Id.*  In support of this contention, Lead Plaintiff incorrectly cites

to an email string dated July 1, 2004.  Osterwise Decl., Ex. 3.  First, this email chain—like all of

the evidence on which Lead Plaintiff relies—is not "new evidence."  It was produced to Lead

Plaintiff on August 21, 2006, over seven months ago.  Wallin Decl. ¶ 2.  Second, paragraph 4 of

Mr. Rein's affidavit refers to remediation items identified during Mr. Reifert's SOX testing at

TurboDisc.  The July 1, 2004 email chain has nothing to do with SOX testing or internal

controls.  To the contrary,                     **REDACTED**

Third, as Lead Plaintiff well knows,

**REDACTED**                     Wallin Decl., Ex. C, Deposition Transcript of Bruce

J. Huff, dated February 9, 2007 ("Huff Tr.") at 78:2-86:19; Wallin Decl., Ex. D, Deposition

Transcript of John Kiernan dated February 27, 2007 ("Kiernan Tr.") at 179:11-181:19.  The

**REDACTED**

9

**REDACTED**    Apart from Lead Plaintiff's bogus arithmetic, its failure to bring this deposition testimony to the Court's attention is an omission that should not be countenanced. Lastly, Lead Plaintiff again fails to explain what, if anything, this email exchange has to do with whether the Kaye Scholer/Jefferson Wells documents are protected by the work product doctrine. The bottom line here is that if they were retained because of the prospect of litigation—and there is no dispute that Kaye Scholer and Jefferson Wells were—the work product protection applies to their resultant work.

### 2. Initiation of Veeco's Internal Investigation

Lead Plaintiff also asserts that paragraphs 5 and 6 of Mr. Rein's affidavit are false. Pl.'s Br. at 5. These paragraphs state, in relevant part, that between January 8 and January 14, 2005, Mr. Rein was informed that potentially improper accounting entries had been identified on TurboDisc's balance sheet, and that based on this information, Mr. Rein was concerned that a financial restatement could be necessary. Lead Plaintiff claims that these statements are contradicted by

**REDACTED**

The portion of Mr. Reifert's testimony cited by Lead Plaintiff, however, is completely unrelated to this proposition. The cited passage contains a general

**REDACTED**

REDACTED

REDACTED

REDACTED

As Mr. Rein made clear in his sworn statement, he was concerned that Veeco would face litigation if it restated its financial results, and that is why Kaye Scholer and Jefferson Wells were retained. Wallin Decl., Ex. A, Rein Aff. ¶¶ 6, 11. Moving the date of Mr. Rein's concern about litigation back in time does nothing to support Lead Plaintiff's argument.

———————————————

REDACTED

11

### *3. Purpose of the Kaye Scholer/Jefferson Wells Investigation*

Lead Plaintiff challenges paragraph 10 of Mr. Rein's affidavit, which states that the Audit Committee authorized Kaye Scholer to retain Jefferson Wells "to assist in the investigation by providing forensic accounting and account reconstruction services." Pl.'s Br. at 2, 6. That is what they did, and it was done unquestionably for the purpose of preparing for litigation, as well as for the business purpose of having accurate public financial statements. As Lead Plaintiff well

**REDACTED**

*See* Wallin Decl., Ex. D, Kiernan Tr. at 158:12-18; Wallin Decl., Ex. B, Rein Tr. at 233:234:3. Indeed, Defendants have never hidden that Jefferson Wells reviewed the restatement adjustments prepared by Veeco management—a fact that the Court recognized in its Order:

> [T]he fact that some or even all of the documents at issue were created in part to ensure that Veeco's public disclosures were accurate does not remove them from the ambit of work product protection under *Adlman*. . . . Mr. Rein and Mr. Greiss openly described the litigation as well as business purposes for creating these documents in their sworn statements and candidly admitted the documents' dual use at the hearing before Magistrate Yanthis.

March 9 Order at *9.

Lead Plaintiff also points to the minutes of Veeco's February 4, 2004 Audit Committee meeting, which state that Messrs. Rein and Greiss

**REDACTED**

Pl.'s Br. at 6-7. Lead Plaintiff characterizes this statement as a direct quote from Messrs. Rein

and Greiss (which it is not), erroneously contends—yet again—that this statement contradicts the
version of events described in Mr. Rein and Mr. Greiss' sworn statements, and asserts—by
misrepresenting Defendants' answer to a Request for Admission—that Defendants have
conceded that a contradiction in fact exists. *Id.* In fact, the relevant portion of Defendants'
Response to the Request for Admission states that:

<strong>REDACTED</strong>

Osterwise Decl., Ex. 6, p. 16-17. And Mr. Rein admitted that one purpose of using Jefferson
Wells as part of preparing for litigation was to "make sure that future press releases, public
disclosures, and SEC filings complied with the securities laws." Wallin Decl., Ex. A, Rein Aff. ¶
10.

Next, Lead Plaintiff mischaracterizes the declaration of Mr. Greiss, Wallin Decl., Ex. F,
Declaration of Rory A. Greiss, dated August 25, 2006 ("Greiss Decl."), by selectively quoting a
few words from a larger paragraph, in order to make it appear as though Defendants asserted
privilege on Jefferson Wells documents simply because they were "stamped 'privileged and
confidential.'" Pl.'s Br. at 7.[5] In fact, the statement in context reads:

> The Kaye Scholer report, the memoranda relating to interviews which I attended
> and participated in, as well as the Jefferson Wells work papers relating to the
> investigation I directed, *contain or reflect my mental impressions*. Each page of
> the final reports and interview memos are stamped "Privileged and Confidential."
> I have never known Veeco to prepare reports or interview memoranda of this
> type, in substantially similar form, during the normal course of its business.

---

[5] Lead Plaintiff's brief cites to the wrong paragraph of the Greiss Declaration. The quoted
passages are from ¶ 8, not ¶ 6.

Wallin Decl., Ex. F, Greiss Decl. ¶ 8 (emphasis added). These reports and interviews, of course, are conceded to be work product, and Lead Plaintiff ignores Mr. Greiss' declaration that the "work papers . . . contain or reflect my mental impressions." *Id.*

Lead Plaintiff, in yet another new argument, similarly misrepresents the deposition testimony of Messrs. Thomas Vollmer and Alex Fredericks, and the contents of an Ernst & Young document, to support its proposition that "*the purpose* of engaging the Jefferson Wells internal auditors was to obtain to [sic] opinions of Ernst & Young on the Company's financial statement." Pl.'s Br. at 8 (emphasis added).

**REDACTED**

IV.    **Lead Plaintiff's New *Adlman* Arguments are Legally and Factually Deficient**

Lead Plaintiff attempts, for the *third time*, to revise the standard for work product protection for dual-purpose documents articulated in *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998). Pl.'s Br. at 8-10. It offers no evidence of new facts or a change in controlling law. Instead, it merely introduces new—and spurious—arguments about how *Adlman* should be

interpreted. Because a novel legal argument does not provide sufficient basis for reconsideration, this Court need not consider it. *See Estrella v. P.R. Painting Corp.*, 2007 WL 174137, at *2 (E.D.N.Y. Jan. 19, 2007) ("It is well-settled that on a motion for reconsideration a party may not advance . . . new arguments not previously presented to the Court.") (internal quotations omitted) (citing *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001)). Even if Lead Plaintiff's new arguments were considered on the merits, they would fail.

Lead Plaintiff argues that the applicable standard for work product protection under *Adlman* is whether documents would have been prepared in substantially similar form in the ordinary course of the *specific* business for which they were created. On this basis, Lead Plaintiff asserts that Defendants must prove that the documents withheld on privilege grounds would not have been created in the *ordinary course of a fraud audit*, absent the prospect of litigation. Pl.'s Br. at 8-9. Notably, Lead Plaintiff cites no authority for this novel view of *Adlman*.

Lead Plaintiff's interpretation is implausible. *Adlman* derives its "ordinary course of business" language from the Advisory Committee's note to Fed. R. Civ. P. 26(b)(3), which contains no such qualification.[6] And elsewhere in *Adlman*, the Second Circuit states the standard without purporting to impart any such additional burden on the party seeking protection. *See, e.g., Adlman*, 134 F.3d at 1202 ("[T]he 'because of' formulation that we adopt here withholds protection from documents that are prepared in the ordinary course of business."). Nothing that Jefferson Wells did was in the "ordinary course of business" and Lead Plaintiff

---

[6] "Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." Fed. R. Civ. P. 26(b)(3) Advisory Committee's note.

does not argue to the contrary. Notably, Lead Plaintiff provides no citation to any case that interprets *Adlman* in this manner.

In sum, because Jefferson Wells was engaged to assist legal counsel in conducting a litigation-motivated investigation, it ignores *Adlman* to assert, as Lead Plaintiff does (*see* Pl.'s Br. at 9), that this Court must consider whether the Jefferson Wells documents would have been prepared in substantially similar form in the course of an *internal investigation into Veeco's litigation position* absent the prospect of litigation. The prospect of litigation was the *raison d'etre* for the Jefferson Wells documents; they would not have been created in any form, "ordinary" or otherwise, without it. Wallin Decl., Ex. A, Rein Aff. ¶ 11. *Adlman* confirms that work product protection clearly applies in such cases: "[I]f the court finds the [document] would not have been prepared but for . . . anticipation of litigation," then the work product privilege attaches. 134 F.3d at 1204.

Lead Plaintiff also insists that to maintain protection over the documents at issue, Defendants must demonstrate that the privileged documents bear "litigation-related substantial differences in form" to non-litigation documents. Pl.'s Br. at 10. This argument misconstrues *Adlman*. *Adlman* does not require that a party affirmatively demonstrate that the documents over which it asserts privilege are substantively different in form from hypothetical analogous documents that might be created absent the threat of litigation. Rather, *Adlman* asks that a court consider whether, in the absence of litigation, such documents *would nevertheless exist* in substantially similar form. 134 F.3d at 1204. The difference between these two approaches is important and clear. Lead Plaintiff advocates inquiry into the form of the document without regard to context. But the *Adlman* standard permits consideration of form only after the factual situation surrounding a document's creation is assessed. The core *Adlman* inquiry, in other

16

words, is not whether the document at issue is sufficiently facially dissimilar to a non-litigation document, but rather whether the form and contents of the document, or its existence, can fairly be said to have been influenced by the prospect of litigation. If Lead Plaintiff were right, there would be no work product protection for a litigation-inspired investigatory document or account reconstruction that looked superficially like a report of past events on an internal audit. Lead Plaintiff exalts facial form over substance and *raison d'etre*.

Other sources clarify this distinction that Lead Plaintiff ignores. For instance, 8 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2024 (which *Adlman* cites in articulating its standard, *see* 134 F.2d at 1203-4) states that a court should look to both "the nature of the document and the factual situation in the particular case" in determining whether work product protection applies. Applying this standard, the court in *In re Grand Jury Subpoena*, 350 F.3d 1010, 1016-17 (9th Cir. 2003) concluded that *Adlman* protected the workpapers of an environmental consultant employed by legal counsel to assist with a corporate internal investigation, even when many of those workpapers were directed toward preparing an Information Request and Consent Order for the EPA. Rejecting the argument that the withheld documents should not be treated as privileged because they "would have been created in substantially similar form to comply with the Information Request and the Consent Order," the court concluded that work product protection applied under *Adlman* because the consultant "conducted his investigations because of th[e] threat [of litigation]. The threat animated every document [he] prepared, including the documents prepared to comply with the Information Request and Consent Order, and to consult regarding the cleanup." *Id.* at 1016.

In any event, this issue is rendered largely academic by the fact that, contrary to Lead Plaintiff's assertion, Defendants have provided an ample factual basis to establish that the

documents it seeks to protect are "substantially different in form" from non-litigation documents.

Mr. Greiss' Declaration clearly states:

> I directed that the final Kaye Scholer report, as well as the supporting material from Jefferson Wells, be prepared in such a manner as to be of maximum utility to the company and its Board in evaluating its legal exposure. The Kaye Scholer report, the memoranda relating to interviews which I attended and participated in, as well as the Jefferson Wells work papers relating to the investigation I directed, contain or reflect my mental impressions.

Wallin Decl., Ex. F, Greiss Decl. ¶ 8.

Mr. Rein's Affidavit states similarly:

> [T]he Kaye Scholer and Jefferson Wells reports and supporting materials were prepared (and prepared in the specific form in which they were presented to Veeco) because of the anticipation of litigation. The work carried out by Kaye Scholer and Jefferson Wells would not have been prepared by Veeco in the ordinary course of business, nor would Veeco prepare work in a form substantially similar to that prepared by Kaye Scholer and Jefferson Wells.

Wallin Decl., Ex. A, Rein Aff. ¶ 11.

Lead Plaintiff cites absolutely no authority for its assertion that each document withheld on privilege grounds that was not directly prepared by an attorney "requires *individual proof* that its form would have been substantially different absent the prospect of litigation." Pl.'s Br. at 7 (emphasis added). This is again a new argument that should have been raised earlier, a point this Court made repeatedly in the opinion being appealed from. March 9 Order at *6, 9. If litigants were required to supply individual proof for each and every such document, the progress of litigation would grind to a halt, as litigants would be forced to prepare hundreds, perhaps thousands, of affidavits like those quoted above. Mr. Rein and Mr. Greiss' sworn statements are enough.

The privileged document for which Lead Plaintiff requests that this Court conduct an *in camera* review (Pl.'s Br. at 10) does nothing to advance its claim that the documents Defendants are withholding lack litigation-specific differences in form. To the contrary, that document

states on its face, in unambiguous terms, that it was prepared at the request of counsel. In any event, it is inappropriate for Lead Plaintiff to raise this new *in camera* argument on a motion for reconsideration. This Court concluded after Lead Plaintiff's previous motion that it had waived its right to seek wholesale *in camera* review by failing to raise the issue with Magistrate Yanthis. March 9 Order at *9.

## V.    Lead Plaintiff Fails to Demonstrate Substantial Need

The Court correctly concluded that Magistrate Yanthis' finding that Lead Plaintiff had failed to demonstrate substantial need was not clearly erroneous. *Id.* at *9-12. Lead Plaintiff offers no basis for reconsideration.

Lead Plaintiff asserts that "several factors make it nearly impossible to obtain the information sought through depositions or interrogatories." Pl.'s Br. at 10. Each of these factors are stated—yet again—in unpersuasive, conclusory terms, and they are incorrect to boot. According to Lead Plaintiff, these factors include: 1) allegedly faulty memory of the witnesses; 2) the likelihood that future witnesses will have faulty memories; 3) Defendants' alleged refusal to allow witnesses to answer questions concerning specific transactions; 4) Defendants' alleged refusal to respond fully to interrogatories; and 5) the burden to Lead Plaintiff of questioning witnesses concerning various transactions at issue in the restatement; and 6) the limitations in the Federal Rules on the number of depositions and the number of interrogatories allotted to each side.

Lead Plaintiff's assertion that Veeco's witnesses have been unable to recall "key facts" about transactions at issue in the restatement, Pl.'s Br. at 10-11, is false. Tellingly, Lead Plaintiff does not offer any evidence of the witnesses' supposedly faulty memories. In fact, as Defendants pointed out in their last-round Surreply dated March 5, 2007,

### REDACTED

19

**REDACTED**

For whatever reason, strategic or otherwise, Lead Plaintiff conspicuously failed to question Mr. Kiernan and Mr. Reifert in as much detail concerning other aspects of the restatement. As this Court's Order states: "lead plaintiff's argument that it has no access to substantially comparable evidence is belied by the fact that lead plaintiff has noticed and taken the deposition of individuals who can testify and have testified concerning various aspects of the restatement. To the extent that the Kaye Scholer and Jefferson Wells work product involved interviewing witnesses, there is no indication that any of them are dead, unavailable, or *would be unable to recollect the relevant information due to the passage of time*." March 9 Order at *11 (emphasis added).

Equally unpersuasive is Lead Plaintiff's argument that it has a substantial need for the Kaye Scholer/Jefferson Wells materials because unnamed, hypothetical future witnesses might have faulty memories if called for deposition. *See* Pl.'s Br. at 10 (asserting that, with respect to the individuals Lead Plaintiff claims it would need to depose, "none of [them] would remember any details"). Lead Plaintiff cites no case where substantial need was found based on such rank speculation, which could be asserted in any litigation. Moreover, Lead Plaintiff never made this argument to Magistrate Yanthis (or this Court), and thus it has been waived.

Lead Plaintiff's assertion that Defendants improperly have instructed witnesses not to answer questions concerning "what they found when examining TurboDisc's accounting errors"

(Pl.'s Br. at 11) is nonsense.[7] Not surprisingly, it offers no evidence of these allegedly improper instructions. In any case, Lead Plaintiff should have applied to Magistrate Yanthis if it had concern about Defendants' privilege instructions or interrogatory responses, which of course it has not done.

Finally, Lead Plaintiff argues that it has a substantial need for the Jefferson Wells/Kaye Scholer materials because it has a limited number of depositions and interrogatories under the Federal Rules. Pl.'s Br. at 11. This new argument would create "substantial need" in any litigation. Lead Plaintiff does not cite a single case that stands for this proposition. In any case,

---

**REDACTED**

**REDACTED**

Lead Plaintiff failed to raise this argument before Magistrate Yanthis, and thus the argument has been waived.

**VI.    Lead Plaintiff's Conduct is Sanctionable Under  28 U.S.C. § 1927**

Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Second Circuit has held that an award under section 1927 is proper when the attorney's actions are so without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay. *See Acevedo v. Immigration and Naturalization Serv.*, 538 F.2d 918, 920 (2d Cir. 1976). This court has the discretion to invoke this statute.

Lead Plaintiff's counsel has continued to litigate the work product issues, even after Magistrate Yanthis and this Court indicated to Lead Plaintiff that the bases of its claims were without merit. *See* March 9 Order at *5 ("Magistrate Yanthis did not misapply the *Adlman* standard; it is lead plaintiff who refuses to accept what that standard means."). Lead Plaintiff's counsel has refused to accept the Court's affirmation of Magistrate Yanthis' decision and, as the Court noted, has misrepresented the facts and even Magistrate Yanthis' decision. *See id.* at *7 ("Lead plaintiff first attempts to convince this court that clear error has been committed by playing fast and loose with the language of Magistrate Yanthis' holding . . . ."). Nothing in the current motion can even remotely sustain the plain error, or new evidence, standard.

In its latest submission to the Court, Lead Plaintiff continues to distort the facts in hope of finally obtaining a favorable ruling on its motion to compel. The purported reliance on "new evidence" is beyond the pale. Pl.'s Br. at 2. This new evidence is nothing more than a set of

factual misrepresentations that Lead Plaintiff's counsel have cobbled together. In addition, much of Lead Plaintiff's "new evidence" is the deposition testimony of Messrs. Rein and Kiernan, it both of whom were both deposed prior to the submission of Lead Plaintiff's March 1, 2007 Reply. Indeed, Lead Plaintiff's Reply brief cited liberally to those depositions. Pl.'s Feb. 28, 2007 Reply Br. at 1-3; Mar. 1, 2007 Osterwise Decl., Ex. A, Ex. B.

In sum, the motion is vexatious and needlessly increases the costs of litigation for all parties. This court may properly exercise its power under 28 U.S.C. § 1927. *See In re Auction Houses*, 2004 WL 2624896, at *8 (S.D.N.Y. Nov. 18, 2004); *Burgos v. Murphy*, 692 F. Supp. 1571, 1577-78 (S.D.N.Y. 1988), *aff'd*, 876 F.2d 890 (2d Cir. 1989) (table decision).

## CONCLUSION

For all these reasons, Defendants Veeco Instruments Inc., Edward H. Braun, John F. Rein, Jr. and John P. Kiernan respectfully request that this Court deny Lead Plaintiff's motion for partial reconsideration of the Court's March 9, 2007 Order.

Dated:  New York, New York
        April 2, 2007

                                    GIBSON, DUNN & CRUTCHER LLP

                            By:  _____
                                    John A. Herfort (JH-1460)
                                    Robert F. Serio (RS-2479)
                                    J. Ross Wallin (JW-3911)

                                    200 Park Avenue
                                    New York, New York 10166-0193
                                    Phone: (212) 351-4000
                                    Fax: (212) 351-4035

*Attorneys for Defendants Veeco
Instruments Inc., Edward H. Braun,
John F. Rein, Jr., John P. Kiernan*

100197984_5.DOC

24